payment.  The efficacy of a rule in such cases, depends in great measure upon the amount of reputation the attorney has left.  If he has sufficient to be worth preserving, and has friends who are able and willing to come to his relief, it frequently results in payment.  We do not, however, regard it as the legal duty of a guardian to resort to such a remedy, nor was he bound to institute a criminal prosecution against the defaulting attorney.  The taking of the judgment note was not a loan of money; it was not even a settlement; the note was a mere memorandum to show the amount of money remaining in the hands of the attorney.  A member of the bar who plunders the estates of minor children in this manner, is not entitled to much consideration; at the same time, we do not see our way clear to punish the innocent guardian for the misdeeds of his counsel.

The decree is affirmed and the appeal dismissed at the costs of the appellant.

--------◄•►--------

## APPEAL OF GEORGE R. BEDFORD, TRUSTEE.

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF LUZERNE COUNTY.

[Argued April 18, 1889—Decided April 29, 1889.]
[To be reported].

(a)  A married woman, her husband joining, conveyed her lands, underlaid with coal, to trustees, "in trust to control, lease, demise, and to mine-let the said lands," and to collect and " pay over and distribute the net income of said estate " to the wife, with remainders over, etc.

1.  In such case, the rents or royalties in the trustees' hands, derived from a lease of coal in unopened mines executed in pursuance of the powers conferred by the deed, were to be regarded as income, payable to the wife for life, and not as of the corpus of the estate, to be held by the trustees under the trust.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

No. 14 July Term 1889, Sup. Ct.; court below, No. 409 January Term, 1889, C. P.

On December 15, 1888, George R. Bedford, surviving trustee under deed of J. Frank Lee and Maggie A. Lee, filed an account to the number and term of the Court of Common Pleas above stated. This account showed a balance in favor of the trust, and among the moneys accounted for was the sum of $100, received on July 28, 1888, from Joseph Birkbeck, on account of coal rents. The account was confirmed on January 7, 1889.

On April 5, 1889, it was agreed between Maggie S. Paine (late Maggie A. Lee) and the trustee, that, as the only question raised with respect to the distribution of the fund in the trustee's hands, was in relation to the item of $100, coal rents, the distribution of the fund including said item should be made by the court directly, without reference to a master or auditor : and the parties thereupon filed the following agreement as to the facts :

Now, April 5, 1889, it is agreed that the following stated deed and the record thereof in the recorder's office in Luzerne county, be received in evidence, to wit: deed of J. Frank Lee and Maggie A. Lee to Geo. R. Bedford and John Worth, Jr., trustees, dated November 7, 1881, recorded, etc.

At the same time the following stated facts are agreed to, as if the same had been duly proven, viz. :

1. That, at the time of the execution and delivery of the above mentioned deed, the ownership of the premises conveyed thereby, was vested in said Maggie A. Lee, alone, under the will of her grandfather, William Swetland, deceased, recorded in said county in Will Book ——, page ——, and that the said J. Frank Lee had no ownership therein, and had no interest therein other than as husband of said Maggie A. Lee.

2. That the surface of the said premises (which is recited in said deed as being in the ownership of the parties of the first part, but which was actually only in the ownership of said Maggie A. Lee, as aforesaid), was at that time and had always been, from the time it was reclaimed from nature, used for agricultural purposes.

3. That at no time has the net annual rental or net income from said surface exceeded the sum of eight hundred dollars, nor is there now any probability that the said net annual rental or net income from said surface will hereafter exceed the sum of one thousand dollars.

Statement of Facts.

4. That, the only other source of income from said conveyed premises, aside from said surface, existing at the time of the execution and delivery of said deed, was that arising from the rentals of a lease, then existing, of about twenty-five acres of the upper vein of coal on said land, and that the said lease was then producing, in rentals or royalties, to the said Maggie A. Lee, not exceeding the sum of three hundred dollars annually, and that there was, and is, no probability that the same would, or will, yield a larger annual rental than the sum named.

5. That, at the time of the execution and delivery of said deed, said Maggie A. Lee was the owner, in her own right, of other valuable real estate.

6. That, after the execution and delivery of said deed, the said Maggie A. Lee became discovert, and that she has since become married to William L. Paine, who is yet living, and that, ever since said last marriage, the name by her assumed and by which she is known is that of Maggie S. Paine.

7. That the said Maggie S. Paine has four children living, of whom two are children by her former husband, J. Frank Lee, and who were living at the time of the execution and delivery of said deed, the elder of whom was then about five years of age, the remaining two younger children being by her present husband, William L. Paine.

8. That the fund involved in this proceeding, consists of a payment to the accountant, as lessor, of one hundred dollars down payment on account of rentals or royalties payable under a lease executed by him July 28, 1888, as surviving trustee, to one Joseph Birkbeck, of all the coal conveyed by said deed, exclusive of, and underlying, the said upper vein, and none of which said underlying veins (leased by said last mentioned lease, as aforesaid), have yet been opened: said lease being for the term of ten years, for the annual mine rent of ten thousand dollars, with the privilege of mining and removing twenty-five thousand tons of coal each year; it being provided, also, that, in case of coal being mined in any one year in excess of twenty-five thousand tons, the lessee should pay for such excess at the rate of forty cents per ton: and which said lease, under the conditions thereof, has since been forfeited, and part of the same premises included in a later lease of the coal thereunder to the Lehigh Valley Coal Company.

[Signed by the parties.]

Statement of Facts.

The deed referred to in the foregoing agreement, conveyed to the trustees therein named, their heirs and assigns, all the right, title and interest in and to a certain described tract of land in Kingston township,

"In trust for the following uses and purposes, and for no other use, intent or purpose whatsoever, that is to say, in trust to control, lease, demise and to mine-let the said lands on such terms and conditions as may seem to them just, reasonable and proper, and to collect and receive the rents, issues and profits thereof, and out of the said income to pay for all repairs or improvements that said trustees may deem proper to make, and for insurance and all taxes and charges that may be assessed or levied upon the said real estate or any part thereof, and also to pay or retain all the charges and expenses of the trust or attendant upon the collection of said rents and income ; thereafter in trust to pay over and distribute the net income of the said estate as follows, viz.: To Maggie A. Lee, for and during the term of her natural life for her sole and separate use, the said Maggie A. Lee agreeing, however, out of said income to properly support, maintain and educate her children during their respective minority ; IN CASE the said trustees or their successors at any time deem it best to provide for such support, maintenance and education, by first applying sufficient of the net income of said estate directly to such objects, they shall have the full right and power so to do, not exceeding, however, one thousand dollars for each child in any one year; AND IN TRUST further, upon the decease of the said Maggie A. Lee to distribute and pay over the said net income to and among her children living at the time of her decease, and the children of any deceased child per stirpes during their minority, and upon the arrival at the age of twenty-one years of each of said children severally, then the said estate shall vest in said children, and the trustees shall divide, grant, assign and distribute the share of such child in said estate to such child, the descendant of any deceased child taking and receiving only such part or share thereof as his or her deceased parent would have been entitled to if then living ; Provided, that if all the children of said Maggie A. Lee shall die before attaining the age of twenty-one years and without leaving lawful issue then surviving, then and in such case the grantees herein named shall thereafter

hold the premises for such uses and in trust for such purpose as said Maggie A. Lee may by her last will and testament duly appoint. And in trust further for the following purposes, viz.: That in case any part of the said real estate should become unproductive, or should any circumstances arise that would in the judgment of the trustees make it to the interest of the cestuis que trust that the said real estate or any part thereof or interest therein should be sold, or should a sale become necessary in the final distribution of the estate, then the said trustees have full power and authority to grant, bargain and sell and convey the said real estate on such terms and with such conditions or limitations as they may deem fit, either at public or private sale, and upon any sale to grant and convey the same in fee simple to the purchaser or purchasers thereof, so that said purchaser or purchasers shall take the same free from all responsibility or liability as to the application of the purchase money by the trustees; Provided, however, that during the lifetime of the said Maggie A. Lee her consent in writing shall be requisite to the validity of any deed or coal lease of said land, which consent may be evidenced by her signature as a witness to such deed or coal lease, or in any other manner. All moneys received by said trustees on account of such sale or coal lease shall be paid subject to the trusts above mentioned.

\*  \*  \*  \*  \*  \*  \*  \*

On April 6, 1889, after argument of the questions involved, the court, RICE, P. J., filed the following opinion :

This case differs from former Pennsylvania cases, but not from the English cases, upon the subject for consideration, in that the instrument we are called upon to construe is a deed and not a will. Nevertheless, in determining whether the rents or royalties accruing under a coal-lease, which the trustees were empowered to make, are capital to be invested, or income to be paid over to the life tenant, the intention of the parties is to control. " The intention of a deed is as much the governing rule of construction as in a will, except that the former still requires formal words of inheritance to make an estate of inheritance in .conveyances of real estate : " Phillips's App., 93 Pa. 45 ; Huss v. Stephens, 51 Pa. 282 ; Criswell v. Grumbling, 107 Pa. 408 ; Mergenthaler's App., 15 W. N. 441.

Whether we confine our attention to the provisions embraced within the four corners of the instrument, or view them in the light of the surrounding circumstances, as shown by the statement of facts agreed to, we have no doubt that in the understanding and intention of the parties the term "income" includes the periodical payments, in the nature of rent, which are usually made under coal and other mineral leases. It includes not only the rents from opened mines, but also from mines to be opened under leases to be executed by the trustees, with the consent of the life tenant, by virtue of the powers contained in the deed. The reasons for this conclusion are fully stated in Eley's App., 103 Pa. 300, and the cases which follow in its lead, and need not be repeated: Shoemaker's App., 106 Pa. 392; Wentz's Appeal, 106 Pa. 301; McClintock v. Dana, 106 Pa. 386.

It is suggested in opposition to this construction of the deed in question, that the coal may be exhausted before the children of the life tenant attain their majority, and in that case the provision for their maintenance by her out of the income might fail. The parties may have regarded this as possible, but we doubt if they regarded the exhaustion of so large a body of land as probable. If they had considered that a sufficient reason for treating the coal royalties as capital, the interest upon which only should go to the life tenant, it seems to us that they would have guarded against the contingency by providing expressly for an accumulation and investment of the royalties. At all events the argument based on this bare possibility is more than offset by the argument in favor of the construction based on the possibility that the interest on the coal royalties, together with the income from other sources, would not be sufficient to enable the life tenant to carry out her agreement to properly support, maintain, and educate her children during their minority.

On a view of the whole case we are unable to distinguish it from the cases cited. We therefore hold that the rents or royalty in the accountant's hands derived from a lease of the coal made pursuant to the powers contained in the deed, are to be regarded as income, and, under the terms of the deed, are payable to Mrs. Paine.

Now, April 6, 1889, the balance in the accountant's hands,

as shown by the partial account filed December 15, 1888, is awarded to Maggie S. Paine.

The trustee then took this appeal, specifying that the court erred:

1. In awarding the fund for distribution to Maggie S. Paine.

2. In holding that under the trust deed of November 7, 1881, Maggie S. Paine was entitled to the corpus of the purchase money to be paid under the sale made and deed delivered by the said trustee, under the power of sale in the said trust contained.

*Mr. J. Vaughan Darling*, for the appellant:

The single question raised in this record is whether the purchase money of the coal shall go to one of the equitable life tenants, viz., Mrs. Lee, now Mrs. Paine, to the exclusion of the other life tenants, namely, her children, or shall be so far treated as purchase money ordinarily is treated, that these children may be surely provided for.

1. When Eley's App., 103 Pa. 300; Shoemaker's App., 106 Pa. 392; Wentz's App., 106 Pa. 301, and McClintock v. Dana, 106 Pa. 386, cited by the court below, were decided, this court had not assumed, at least as definitely as it has since done, the position that these supposed coal leases were out and out sales; that they passed the whole title to the miscalled lessee, and that what was in them called " rent " was, in fact and in law, merely purchase money, which as in the case of other sales, went to the administrator of the lessor. But under the doctrine of the later cases, Hope's App., 2 Cent. R. 43, and Fairchild v. Fairchild, 7 Cent. R. 873, it is impossible to treat the purchase money going under these instruments to an administrator as " income," unless, as in the case of a will, the intention to give the thing itself is clear, or, in the language of Mr. Justice CLARK, in McClintock v. Dana, the intention " being established," the " technical character of the rental becomes unimportant."

2. But while the intention is as much to be sought for in a deed as in a will, yet in the former, legal and technical terms must be given their proper and established meaning. In the first instance, therefore, the instrument, under which the fund for distribution arises, must be regarded as a conveyance or sale,

executed by the trustees under the power to sell, and the fund itself the purchase money. The deed of November, 1881, clearly grants the power to lease, as something distinct from the power to sell. The former power is to be exercised without reference to Mrs. Lee; the latter only under given circumstances and with her written consent. And that the donors recognized the distinction between a lease proper and a sale, or its now constructive equivalent, a coal-lease, is shown by their express reference to the latter as such equivalent "sale or coal-lease." By no canon of construction can the limitation as to circumstances and consent be referred back so as to qualify the first granted and absolute power to lease.

3. It is true, that under the English cases, rents, under a coal lease executed by executors or trustees under powers given either by will or deed, go to a life tenant, just as the rents of an opened mine would do. But it must be remembered that the logic of the English cases is, that, these instruments being leases, the royalties or returns made for the coal taken are rents and therefore constitute income, and go to the heir and not to the administrator. Whereas, the logic of the Pennsylvania cases is, that these instruments are not leases, but sales, and the rents and returns for the coal taken are purchase money. It is therefore difficult to see how in this state, that which is declared to be purchase money, arising under a sale and going to an administrator, can at the same time be called rent, or income, and go either to the heir or tenant for life.

4. All the cases relied on in Pennsylvania, were not merely cases or wills, but were cases in which the person claiming the fund was the only direct and certain object of the testator's bounty; as, for instance, a son, to whom a share of the residuary estate had been devised, or an only child, etc., and where the remainders over were either to an ascertained person or to an unascertained class. But there are direct considerations apparent on the face of the deed and the surrounding circumstances, as they appear upon this record, which show that the purchase money, or the price of the coal, was not to go to Mrs. Lee. In the first place, she was not the donor's direct, or even remote, object of bounty. She was to take under the deed something less than she had had before its execution, and she was to assume out of what she was to get under that deed, the support

of these children. Her husband gave up his curtesy estate, but not to her. With him, as with her, the only common object of bounty was the children. It was for their support, maintenance and education, that both parents united in giving up their respective estates in this land.

5. A construction that would give the corpus of this estate to the wife, free from the husband's curtesy, and leave the children nothing, must be radically wrong. The elder of the children, at the time of the execution of this trust deed, was not five years old. In the sixteen years before her majority, at least $160,000 would have gone to the mother. It is certainly possible, and indeed very probable, that within that period all the coal could be exhausted or paid for in advance, and nothing left for the support and education of the children. It is no answer to this to say that the deed might have contained an express trust for an accumulation or an express limitation of the mother's right, for the reason that the technical terms in the deed, as we have endeavored to show, simply are those of a sale, and the only trusts to the mother are for the income and not for the purchase money; and this legal intent and effect of the instrument can only be avoided or overturned by a supposed intention to treat as income, that which is certainly and clearly, under the later cases in Pennsylvania, nothing but purchase money.

*Mr. Alexander Farnham*, for the appellee:

1. It is a great mistake to imagine that the doctrine that the grant of a right to take coal to any extent is a grant of an interest in the land, is of recent recognition in this state. The question first came before this court in Caldwell v. Fulton, 31 Pa. 475; again, in Harlan v. Leh. Coal & N. Co., 35 Pa. 287; likewise in Stoughton's Appeal, 88 Pa. 198. See also Justice WOODWARD's opinion in Funk v. Haldeman, 53 Pa. 243, quoting Bainbridge on Mines, 246. There is nothing new therefore in Hope's App., 2 Cent. R. 43, and Fairchild v. Fairchild, 7 Cent. R. 873. In addition to the cases cited by the appellant against us, we furnish another, viz.: Duff's App., 12 Cent. R. 544, s. c. 21 W. N. 491, which went so far as to decide that royalty under a mining lease is not rent, but part of the corpus of the land. Of course the cases mentioned are each and all to be viewed in the light of the surrounding facts or conditions affecting the subject.

2. This doctrine, however, does not prevent the owner, where the rights of no mortgagee intervene, from treating and disposing of that which is taken from the land as being divested of its characteristics of realty and partaking of the nature of personalty. As against a mortgagee, the owner's intention will not avail to deprive the former of his lien security upon all that stands in place as part of the land ; but as against the remainder-man, such intention must prevail, because it is solely by the will of the owner that he is a remainder-man. So, also, with respect to the reversioner : the will of the owner, as manifested during his lifetime, by opening mines, may divest the thing mined of its character of realty during the existence of the life tenancy, giving its proceeds to the holder of the latter. As before remarked, each of the cases referred to, wherein the nature of a lease of minerals, or of the rentals therefrom, have been determined, must be viewed in the light of surrounding facts.

3. The intention of a deed is as much the governing rule of construction as in a will, and the construction of this deed, with respect to the coal-rentals, must come within the operation of the same principles that obtained in Eley's Appeal, Wentz's Appeal, McClintock v. Dana, and Shoemaker's Appeal. We find on examination that the powers granted to the trustees are the same, viz., to lease the coal and to pay over the income of the estate to certain cestuis que trust. In these cases the grant of power to the trustee to lease the coal is held as being tantamount to the testator having leased it himself in his lifetime. That this court regards the like powers in a will and deed as expressing a like intent, is evident from its reasoning in Eley's Appeal, supra, in which Justice STERRETT cites Daly v. Beckett, 24 Beav. 114, and quotes the language of the master of the rolls, applying it to the case in hand. The circumstances of that case are in almost perfect analogy to this one, in whatever aspect we regard it. It is a deed creating the trust, using like language respecting the income, the like power to lease coal being granted, and the like circumstances, as to the coal, existing, even to that of a small portion of one of the veins being already under lease.

4. It is also to be remembered that, as to the children, Mrs. Lee was the absolute owner of the property, having the right

to pass the inheritance by will to other than her own offspring. She voluntarily took on herself the obligation to maintain and educate them during their minority. Had she not executed this deed, and had leased the coal, her absolute right to the whole of the rentals would have been unquestioned. So, also, if she had leased it before executing the deed. It certainly cannot be supposed that she would voluntarily give up this possible source of income, and, after granting such power as to enable the coal to be leased, at the same time intend that she could not avail herself of its proceeds to the same extent as if she had leased it herself. On the contrary, it appears from the surrounding facts specified in the agreement, and it likewise appears all through the provisions of the deed, that the grantors looked to the coal-rentals from future leases of the same as a source of income for her enjoyment, she simply stipulating that she would educate and support her children during their minority, and securing her covenant out of the same source of income.

PER CURIAM :

We affirm this decree upon the opinion of the learned judge of the court below.

> Decree affirmed and the appeal dismissed at the costs of the appellant.

## APPEAL OF J. J. WAGENHORST.

[WAGENHORST v. KISTLER'S EXRS.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF LUZERNE COUNTY, IN EQUITY.

Argued April 18, 1889—Decided April 29, 1889.

Where it appears on an appeal from a decree dismissing exceptions to an account reported, that the account was stated in accordance with the preliminary decree ordering an account, and the evidence upon which the preliminary decree was based is not supplied, that decree will not be revised or corrected by the Supreme Court.