## Geyelin's Estate

Before Van Dusen, P. J., Stearne, Klein, Bolger and Ladner, JJ.

*Ballard, Spahr, Andrews & Ingersoll,* for exceptants. *Barnes, Biddle & Myers,* contra.

BOLGER, J., May 28, 1937.—The position of the auditing judge in passing upon the question whether the funds acquired by the trustees from their contracts to permit commercial cutting of timber should be allocated to principal or income was difficult. The situation was tantamount to being required to find whether or not the allocation of such proceeds to income amounted to waste and to whether the remainder interests were entitled to relief in the nature of a writ of estrepement. The facts before him were fragmentary, as he points out. He has found that the broad power in the deed authorized the trustees to cut the timber and that the proceeds are income. Exceptants complain that these findings are not supported by the evidence; that (1) the proceeds are principal; (2) the analogy of timber land to mineral land is incorrectly drawn; (3) the trustees' powers are improperly construed; and (4) the application of the rule of preference to life tenants when they are children is incorrect.

The burden of proof was and is on the remaindermen to establish waste: Morris v. Knight, 14 Pa. Superior Ct. 324, wherein the court stated that the presumption is in favor of the life tenants, and that waste must be shown to exist by the weight of the evidence. This amounts to proving, as declared in Yocum, Guardian, v. Zahner, 162 Pa. 468, that there has been injury to the freehold, or, as stated by Coulter, J., in McCullough v. Irvine's Exrs., 13 Pa. 438: ". . . permanent injury to the freehold or inheritance".

The rights of a life tenant to proceeds of cut timber we find are greater in Pennsylvania than are similar rights in England: Lynn's Appeal, supra; Hastings et ux. v.

Crunckleton et al., 3 Yeates 261. In the last named case the court stated:

"It would be an outrage on common sense to suppose, that what would be deemed waste in *England*, could receive that appellation here."

The life tenants have an additional advantage, to which we must give cognizance, namely, that announced by our present Chief Justice in Opperman's Estate (No. 1), 319 Pa. 455, 459:

"In determining the relative rights of life tenants and remaindermen we will, wherever possible, protect with jealous care the interests of the widow and children who are usually made the primary objects of testator's bounty. No sharp lines should be drawn in protecting those interests, though the testator may, by his will, put it out of the power of courts to promote this just end. But such interdiction must come from and be expressed in clear, positive language."

We are guided in our decision, if indeed not governed, by the decision of Penrose, J., in Grubb's Estate, April term, 1891, no. 290. In his adjudication, dated November 9, 1910, in awarding the proceeds of timber operations by a trustee over a period of 15 years, amounting to in excess of $10,000, to the life tenant's executor, where testator had conducted some timber operations during his lifetime, Judge Penrose stated:

"Cutting and sale of marketable timber from timber land by the trustee of a life estate, done in the natural and reasonable use of the land for the purposes for which it is maintained and is available, according to the usages and principles of good forestry, cannot be regarded in law as an act amounting to waste, or an injury to the remaindermen, and the beneficiary for life is entitled to the product, or its proceeds. The life tenant of an opened mine may appropriate to his own use the produce of the mine, and is not chargeable with waste or injury to the estate of the remainder, provided he mines in a proper manner. In like manner, the life tenant of a timber tract,

used as such by the former owner, may cut and remove timber, and he is entitled to the product.

"Where the timber is appurtenant to other property, or it is not the chief and natural produce for which the land is available, as for instance on farm lands, the rule of law regarding the rights of life tenants and remaindermen to take off the trees is essentially different. An examination of the cases in Pennsylvania shows that the life tenant of timber land, or of a mine, is not limited by law as to the quantity of timber he may cut, or mineral he may mine, and is restrained only by those principles of good business operation or mining which, if unexercised, would manifestly involve injury to the estate."

Without attempting to improve upon the opinion of that eminent jurist, we merely note that his decision is supported by Williard et al. v. Williard et al., supra, from which the analogy drawn by the present auditing judge is derived, that the rights of a life tenant in timber lands, useful only as such, are catalogued with those to mineral lands such as coal, oil, gas, and quarries. In the case of mineral lands, the rights of the life tenant are determined by the circumstances: (1) Whether testator or settlor did or did not open and operate the mines; if he did, the life tenant could operate to exhaustion: Appeal of Shoemaker et al., supra; if he did not, no right existed in the life tenant to open or to operate: Marshall v. Mellon et al., 179 Pa. 371; Deffenbaugh v. Hess, 225 Pa. 638. But (2) if the creator, that is, testator or settlor of the trust, empowered the life tenant or trustee on his behalf to lease or to otherwise operate, such power is regarded as tantamount to testator or settlor having opened the mine or operated the timber lands in his lifetime: Appeal of Wentz et al., 106 Pa. 301; Bedford's Appeal, 126 Pa. 117; Blakley et al. v. Marshall, Trustee, 174 Pa. 425.

Since settlor in the instant case gave the broad powers to her trustees, as enumerated in the adjudication of the learned auditing judge, we find that she thereby invested them with the powers to do as they have done, namely, to cut the timber, as though she had done it before the crea-

tion of the trust. In Appeal of Wentz et al., supra, testator's executors were authorized to sell his real estate and use their own good judgment as to the propriety thereof, or of leasing it. He furthermore directed them to collect and pay all the income arising from his estate, both real and personal, to his wife for life, with remainder to his children and their children. The executors leased the coal mines lying under the surface, and the court held that the rents or royalties arising from such lease were income, and as such payable to the widow. The court stated that while testator had not opened the mines in his lifetime, nor did he in his will specifically direct their opening, nevertheless when he conferred upon his executors a general power to lease as well as to sell his real estate, that was tantamount to an opening of the mines. The language of the Supreme Court in that estate, sustaining Penrose, J., is so clear that we quote it herein:

". . . we must regard the mines opened under this power in the same light as though opened in his lifetime, for the manifest intention was that in this manner an income should be derived from the land, and, by the express terms of the will, such income must go to the widow during her life or widowhood. . . . This land was useful as coal land, and for nothing else; the surface could not be rented, hence the power to lease must refer to the minerals or to nothing."

Further on, the court stated that it could not entertain the belief that the intention of testator was that his executors should be limited to the leasing of barren waste surface which could afford little or nothing in the way of rent for the support of his wife and minor children.

We are therefore of the opinion that the auditing judge was correct in finding, from the limited record before him, that the burden of proof resting on the remaindermen to establish waste or permanent injury to the inheritance was not sustained by them, and that the award of the proceeds as income was correct.

The exceptions are, accordingly, dismissed, and the adjudication confirmed absolutely.