## Sayers et al. *versus* Hoskinson et ux.

1. Mines and quarries open at the beginning of a life estate may be worked by the life tenant even to exhaustion, without rendering him liable in damages for waste.

2. It is not waste for a life tenant to cut and fell dead and decaying timber which would otherwise become worthless before the life estate fell in.

3. An action for waste by a reversioner is founded upon damage done to the inheritance, and as the cutting of such timber would tend to enhance rather than diminish the value of the same by making room for new timber, there can be no recovery for such action.

4. The common law rule as to what constitutes waste has been much relaxed in this state, especially in regard to timber. A life tenant may here cut down trees if they impede cultivation and if good husbandry requires their removal.

5. Assignments of error, which do not conform to the rules of court, will be disregarded.

October 8th, 1885.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Greene county:* Of October and November Term 1885, No. 9.

Case by William W. Sayers, Perry A. Bayard and Ann C. Bayard, his wife, in right of said Ann C. Bayard and Ezra M. Sayers, who are the reversioners of a tract of land containing about two hundred acres, situate in said county, against Elizabeth Hoskinson, who was the widow of E. Sealey Sayers, deceased, and her husband, Robert Hoskinson, to recover damages for waste alleged to have been committed by the defendants to their inheritance in mining coal, quarrying limestone and freestone and in cutting and selling off the premises locust timber, shade and other trees.

On the trial, before INGHRAM, P. J., the following facts appeared: E. Sealey Sayers died intestate in September, 1865, seised of a large tract of land in Greene county. He left surviving him a widow and two children. The son died in his infancy in April, 1866. The daughter married J. B. Lindsey and died about the year 1870, intestate and without issue, leaving her husband surviving. Thus the widow, who subsequently married Robert Hoskinson, was the owner of a life estate in one third of the lands as widow, and of another as heir of her deceased son, and James B. Lindsey was the owner of a life estate in the remaining third as tenant by the curtesy. The widow and Lindsey made a partition whereby the lands,

upon which the alleged waste was committed, were set apart to her.

The widow and her husband, Robert ·Hoskinson, subsequently leased her lands to William F. Smith for a period of five years from April 1st, 1872. In pursuance of this lease Smith took possession. of this land and burned and sold a large quantity of lime from this land. He also quarried and sold freestone to a considerable amount, he also cut down and sold a number of locust and white oak trees. Most of this timber was taken from land not cultivated. Smith also mined and sold a large quantity of coal from these lands.

The plaintiffs, who are the heirs of E. Sealey Sayers, deceased, and as such the owners of the reversion, then brought this action against the life tenants to recover damages for the above acts of their tenant Smith.

The defendants showed that both the limestone and the freestone with which the plaintiffs sought to charge them, were taken from quarries that had been opened and worked by E. S. Sayers, and that the locust trees were cut in order to fit the ground for cultivation, and that the cutting of them was necessary and proper under the circumstances; that most of the timber cut by them was dead or dying and that the rest of it was used to make necessary repairs on the place.

Plaintiffs requested the court to charge, *inter alia*, as follows:

"5. That whether the cutting of the timber was a benefit or injury to the estate has nothing to do with this case. Are the acts complained of a lasting injury to reversioners, is the question." *Answer.* "Refused as to first clause; affirmed as to the second." (First assignment of error.)

"6. A quarry is defined to be a place, cavern or pit where stones are dug from the earth, etc., and for making barns, houses and other erections; the mere cutting off the edges of a rock for such purposes as testified in this case cannot be construed to mean a quarry in the legal interpretation of the word." *Answer.* "Refused." (Second assignment of error.)

Defendants requested the court to charge, *inter alia*, as follows:

"3. The felling of dead or dying timber by Freeman Smith, if done so long ago that the timber would have become worthless by natural decay, before the present time, if it had not been felled by him, then the felling of it could be no injury to the inheritance; and therefore would not be waste, and this being an action on the case, in the nature of waste, there can be no recovery against the defendants for the felling of such timber." *Answer.* "Affirmed." (Third assignment of error.)

"4. The felling of locust trees by Smith, which stood in open

fields in such a way as to obstruct the cultivation of the ground and prevent the growth of vegetation by their shade, to such an extent that good husbandry required their removal, then Smith had a right to fell and remove them, and his doing so furnishes no ground for the support of this action." *Answer.* " Affirmed." (Fourth assignment of error.)

The court charged the jury generally that, if they should find that the inheritance had been injured, their verdict should be for the plaintiffs, otherwise for the defendants.

Verdict for defendants and judgment thereon. Plaintiffs then took this writ assigning for error the answers to the above points and also the following:

5. The court erred in rejecting the offer of plaintiffs to prove the declarations of Smith, as to the cutting and sale of timber off the premises.

6. The court erred in their general charge to the jury in regard to ascertaining damage done to plaintiffs by cutting and selling timber, and the selling of lime from the premises in possession of life tenant.

7. The court erred in ruling in favor of defendants' bills of costs being taxed correctly.

*James E. Sayers* and *E. M. Sayers*, for plaintiffs in error.— Cutting trees from the land and selling the wood constitutes waste: Paddelford *v.* Paddelford, 7 Pick., 152.

The tendency of the law in regard to waste at present is toward a stricter observance of the English rule, and timber and shade trees are being protected with more care.

The question is not whether the land may be of equal value at the falling in of the life estate, to what it was when it began, but whether the inheritance has been injured by the acts. If it has been so injured, the owner of the reversion has a right of action: Taylor's Landlord & Ten., 263. Smith had no right to remove the lime from the land: Lewis *v.* Jones 5 Har., 262.

Trees cut, not for clearing but for sale, is waste: Ward *v.* Sheppard, 2 Hayward, 283. In a very recent case, Clark *v.* Holden, 7 Gray, 8, it has been held that cutting trees on woodland by a tenant for life, not for use of the estate, is waste, although done with the intention of restoring the land to the condition of pasture land, in which it was when the estate for life commenced; and although it would be good husbandry in an owner in fee to so restore it.

The law is not so unreasonable as to allow a tenant to cut timber under any pretence. And, although it may appear in a dying condition, a life tenant has no right to cut and sell it.

[Sayers *v.* Hoskinson.]

In such case, the court, on request of the remainderman only, will order it cut for his use: Addison on Torts, 344.

*J. A. J. Buchanan* (*Wyly & Walton* with him), for defendants in error.—The English rule in regard to waste does not apply here. "Lands in general with us are enhanced by being cleared, provided a proper proportion of woodland is preserved for the maintenance of the place. If the tenant in dower clears part of the land assigned to her, and does not exceed the relative proportion of cleared land, considered as to the whole tract, she cannot be said to have committed waste thereby:" Hastings *v.* Crauckleton, 3 Yeates, 262; Lynn's Appeal, 7 Casey, 46; 1 Washburn on Real Property, 141.

The extent to which a life tenant may cut wood and timber is for the jury: Jackson *v.* Brownson, 7 Johns., 227; 1 Washburn on Real Property, 142.

Both the coal mines and the limestone quarries had been opened and used before the life tenant went into possession, and the continued use by such tenant is not waste: Kier *v.* Peterson, 5 Wright, 357.

"To cut and remove dead or decaying timber in order to clear the land and give the young trees a chance to grow is not waste:" 11 Vt., 293.

We take it for granted that the fifth, sixth and seventh specifications, having been prepared in disregard of the rules of this court, "will be held the same as none." The fifth specification gives neither the offer, nor the objections to the offer, nor the action of the court upon the offer. The sixth specification does not quote the part of the charge referred to *totidem verbis*, nor does it even inform us what the question was or how it was decided. The seventh specification requires no notice.

Mr. Justice Paxson delivered the opinion of the court, October 19th, 1885.

This action was brought by the reversioners against the tenants for life to recover damages for certain acts of waste committed or suffered by the latter. The alleged waste consisted of mining coal, quarrying limestone and freestone, and cutting timber and other trees. The matter of the coal was abandoned below, and was not pressed here. And the contest for the limestone and freestone might as well have been abandoned, as the jury found for the defendants upon evidence which they could not well have disregarded, and under instructions from the court which were free from error. It was very clear that the mines and quarries had been opened and worked in the lifetime of E. Sealey Sayers, the owner in fee

from whom the estate descended.   It is settled law that mines and quarries, open at the commencement of the life estate, may be worked by the life tenant even to exhaustion: Neel v. Neel, 7 Harris, 323; Lynn's Appeal, 7 Casey, 44; Shoemaker's Appeal, 10 Out., 392.

The remaining questions relate to the trees.   It is raised, so far as it is raised at all, by the third and fourth assignments of error.   We will treat it precisely as it is presented by the record.

The defendants' third point requested the court to instruct the jury that "the felling of dead or dying timber by Freeman Smith, if done so long ago that the timber would have become worthless by natural decay before the present time if it had not been felled by him, then the felling of it could be no injury to the inheritance, and therefore would not be waste, and this being an action on the case in the nature of waste, there can be no recovery against the defendants for the felling of such timber."

The learned judge affirmed this point.   Conceding the facts assumed in it, he could not have done otherwise.   It related solely to dead and dying trees, such trees as would have become worthless by this time by natural decay.   Surely it could do the reversioners no harm to cut trees that would have decayed before the life estate fell in.   On the contrary, the cutting of such trees would have made room for young and thrifty trees which would have been making timber for the reversioners during the lifetime of the tenants for life. This was an action to recover damages for an injury to the inheritance; if there has been no injury there can be no damages.

The fourth point alleges error in the answer of the learned judge to the defendants' fourth point.   The point is as follows: "The felling of locust trees by Smith, which stood in open fields in such a way as to obstruct the cultivation of the ground and prevent the growth of vegetation by their shade to such an extent that good husbandry required their removal, then Smith had a right to fell and remove them, and his doing so furnishes no ground for the support of this action."

The common law of England was very strict in regard to waste.   Its rigor has been much relaxed here especially in the matter of timber.   This was to be expected in a new country where land was far more valuable without timber than with it. In Hastings v. Crunckleton, 3 Yeates, 261, it was held that a tenant in dower may clear woodland assigned to her in dower, provided she does not exceed a just proportion of the whole tract.   It was said by the court in that case: "There was a material difference between the local circumstances of this

[Tenant *v.* Tenant.]

state and Great Britain. It would be an outrage on common sense to suppose that what would be deemed waste in England could receive that appellation here. Lands with us in general are enhanced by being cleared, provided a proper proportion of woodland is preserved for the maintenance of the place. If the tenant in dower clears part of the lands assigned to her, and does not exceed the relative proportion of cleared land, considered as to the whole tract, she cannot be said to have committed waste thereby." And see Lynn's Appeal, 7 Casey, 44.

The Act of 10th April, 1848, declares that the tenant for life " shall not be restrained from the reasonable and necessary use and enjoyment of the land and premises in his possession," and the presumption is in favor of the life tenant until the contrary appears: Lynn's Appeal, *supra.*

The ruling of the court below in affirming the defendants' fourth point is in exact accord with the law as above stated. If the locust trees referred to were in the way of cultivation, if they prevented the growth of vegetation by their shade, and good husbandry required their removal, the life tenants had the right to remove them, and they are not liable to the reversioners therefor.

The fifth, sixth and seventh assignments do not conform to the rules of court, and will not be discussed. The remaining assignments disclose no material error.

Judgment affirmed.