# In re Estate of Henry Rudy, deceased. Appeal of Samuel M. Hudson.

*Will—Remainder—Vested and contingent estates.*

Where persons must be living at a certain time in order to take an estate, the gift is contingent, because, until the time arrives, the persons who would answer that description cannot be ascertained.

If, by the phrase "if they be living," a qualification is annexed to the person, without fulfilling which he will be ineligible to take, the gift is uncertain until the condition is met, and is necessarily contingent upon the fact of his living. If, however, it is used to mark the time at which the estate shall vest in possession, so that the children are to take an estate descendible to their issue, which is to be enjoyed by the children at the death of the life tenant, or by the heirs of their body if they shall be dead, it carries a vested interest.

Where real estate is directed to be converted in order to subserve a purpose it will be treated as personalty for that purpose, but will remain unchanged as to all beyond what that purpose requires.

Testator gave to his wife the income of his residuary estate for life, and authorized and empowered his executors to sell the residuary realty at her death, and to divide the proceeds of the sale equally between his two children, S. and G., "if they be living, or the issue of such of them as may then be deceased." G. died in testator's lifetime, intestate, and without issue. S. died before the widow, leaving two sons, one of whom died prior to the death of the widow. After the death of the widow, S.'s husband filed a petition for sale of the real estate and division of the proceeds. *Held*, (1) that the fee centered in the survivor of S.'s sons as the one owner, and the direction to divide fell because it was impossible to sever what is indivisible; (2) that S.'s husband as tenant for life in one fourth of the realty had not such interest as would entitle him to a sale.

Argued March 24, 1898.    Appeal, No. 366, Jan. T., 1897, by Samuel M. Hudson, from decree of O. C. Phila. Co., Jan. T., 1897, No. 168, on petition for sale of real estate.    Before STERRETT, C. J., GREEN, WILLIAMS, DEAN and FELL, JJ.    Affirmed.

Petition of Samuel M. Hudson, the husband of Sarah K. Hudson, née Rudy, for sale of real estate.

The facts appear by the opinion of ASHMAN, J., dismissing the petition which was as follows:

The testator gave to his wife the income for life of his resid-

uary estate, and at her death he authorized and empowered his executors to sell the residuary realty and to divide the proceeds of its sale equally between his two children, Sarah K. and George W. Rudy, "if they be living, or the issue of such of them as may then be deceased." He died in 1878. George W. died in testator's lifetime, unmarried and without issue. The widow died November 30, 1895. Sarah K. died before the widow, but after the testator, leaving her husband and two sons to survive her. One of the sons died during the life tenancy, leaving a widow. The husband of Sarah petitioned for an order of sale of the realty and a division of the proceeds. Had he an interest in the estate? And if he had, was it an interest which qualified him to ask for the sale? This question involves the preliminary inquiry as to the character of the estates given to the children. Were they vested or contingent interests? The word "if," in the language of the gift "if they be living," undoubtedly imports a contingency; yet the context may show that the contingency was not a condition precedent to the vesting, but a condition subsequent which would operate merely to defeat an already vested estate. Thus, in Andrew v. Andrew, Law Reps. 1 Ch. Div. 410, A. devised land to T. for life, and from and after his death to his oldest son, if he should have attained the age of twenty-one, and in default of T.'s having a son, then over. T. died, leaving one son, a minor. It was held that "from and after" meant an immediate gift at the death of the life tenant, and that the son took a vested estate in fee, subject to be divested by his death while a minor. In Alexander v. Alexander, 16 Com. B. 59, however, where the gift was to A., the son, for life, and from and after his decease to A.'s second son, on his attaining twenty-one, and in default of there being a second son, then over, the decision was that the remainder to A.'s second son, who died in his minority, was contingent. In Pennsylvania the rule is well established that where the persons who are to take must be living at a certain time, the gift is contingent, because, until the time arrives, the persons who will answer to that description cannot be ascertained. Hence a gift to "such of his children as might then be living" (McBride v. Smyth, 54 Pa. 245), or to a child for life, and after her death to "all her children then living" (Buzby's Appeal, 61 Pa. 111; Delbert's Appeal, 83 Pa 462), has been

esteemed contingent. It is difficult—perhaps it is better to say impossible—to harmonize the latter cases with Crawford v. Ford, 7 W. N. C. 532, and Laguerenne's Estate, 12 W. N. C. 110, where the gift at the end of the life estate was to "all my children who shall be then living, and the lawful issue of such as as shall be dead;" or Manderson v. Lukens, 23 Pa. 31, to "be equally divided among his children which should be then alive;" and Womrath v. McCormick, 51 Pa. 507, where the estate was to "be divided into as many parts as testator should then have children living, and be given to his living children and the issue of those dead," in all of which cases the estates were held to be vested. In this instance the scale vibrates about evenly.

If, by the phrase "if they be living," a qualification is annexed to the person, without fulfilling which he will be ineligible to take, the gift is uncertain until the condition is met, and is necessarily contingent upon the fact of his living. If, however, it is used to mark the time when the estate shall vest in possession, so that the children are to take an estate descendible to their issue, which is to be enjoyed by the children at the death of the life tenant or by the heirs of their body, if they shall be dead, it carries a vested interest. This was the doctrine of Richardson's Appeal, 19 W. N. C. 175, where the gift was after the wife's death, to the children by name, "and if any of my said children be deceased," the share shall go to his issue. The assumption that the interests were vested is favorable to the petitioner. If they were contingent upon the survival of the life tenant, the only party who by possibility would take was the surviving grandchild. The scheme of the will was to work a conversion.

The stock and fixtures in trade of the testator were ordered to be sold, and their proceeds, together with the proceeds of sale of two specified houses, were directed to be applied to the payment of his debts, and finally, the moneys from the sale of the remaining real estate were to be divided among his children. The lapsed share of George, if it was personalty, vested as to one third in testator's widow and as to the balance in Sarah as testator's next of kin, and at her death in her two sons. When one of them died, the widow of the son was entitled to one half and the father to one half absolutely. But the intention to effect a sale was auxiliary to another and paramount intention

—to effect a convenient transmission of testator's property to the devisees. The one intent affected the means, and the other the end, and if, for any reason, the means were useless towards attaining the end, the lesser intent should be discarded. The purpose of a sale, and therefore of a conversion, was that the estate might be divided; if there was no necessity for a division, the purpose fell and the estate remained unconverted.

In the famous argument of Mr. Scott, afterward Lord ELDON, which was adopted by the chancellor in Ackroyd v. Smithson, 1 Bro. Ch. 503, it was shown that, in order to oust the heir, there must be not only an intention to convert the real estate for the purposes of the will, but also to give the product of the sale as personalty at all events and whether the purpose takes effect or not. In that case, the testator ordered his real and personal estate to be sold, and he gave the net proceeds to legatees, two of whom died in his lifetime. The lapsed shares, so far as they consisted of personalty, went to the next of kin, and, so far as they were constituted of realty, went to the heirs at law. This doctrine that real estate directed to be converted in order to subserve a purpose will be treated as personalty for that purpose, but will remain unchanged as to all beyond what that purpose requires, was upheld in King v. King, 13 R. I. 501, and Craig v. Leslie, 3 Wheat. 581, and those cases were followed by this court in Worsley's Estate, 36 W. N. C. 247.

Where the purposes of the conversion have totally failed the property will devolve according to its original character: Bisp. Eq., sec. 315. This retention of the quality of an estate, which the testator intended to transmute into another and different quality, may work a radical change in the interests of his beneficiaries. But that consideration can have no weight when we reflect that what has happened was outside of his contemplation altogether. He supposed that more than one person would share the residue, or he would not have ordered the sale and division of that residue. How can we, with any show of propriety, speculate upon what, if he had foreseen the actual event, he would or would not have done, either by way of preferring the heir, on the one hand, or the next of kin, on the other? The share which is in controversy lapsed by operation of law. Its disposition cannot be referred to the intention of the testator, because he had no intention with regard to it. It must be

determined by the law, to which his silence on the point has relegated it.

The case, then, is simply this: At the death of George W. Rudy, his share vested in Sarah K. Rudy as sole heir of the testator, but, inasmuch as her estate did not vest in possession, living the life tenant, her husband could not, at her death, take as tenant by the curtesy. Her two sons succeeded to her estate, and on the death of one of them, the survivor, subject to the life interests of the widow and father, took the lapsed share as heir, and the residue as sole devisee. The fee therefore centered in him as the one owner, and the direction to divide fell, because it is impossible to sever what is indivisible. The petitioner, as life tenant in one fourth of the realty, has certainly not such an interest as will entitle him to a sale.

*Error assigned* was the decree of the court dismissing petition.

*Allen H. Gangewer*, with him *George D. Hay* and *Gilbert & Atkinson*, for appellant.—The language used by Henry Rudy in his will would, under our acts of assembly, necessarily vest his estate in his executors or their successors : Act of March 31, 1792, 3 Sm. L. 66 ; Act of February 24, 1834, P. L. 75 ; Act of March 12, 1800, 3 Sm. L. 433, sec. 3.

The executors under such a will are clothed with a power coupled with an interest, and the effect is to convert the realty into personalty, so much so that the interest of the heirs is not liable to lien or sale by the sheriff. It breaks the descent and vests the estate in the executors, leaving the legatees only an interest in the proceeds: Scott on Intestate Law (2d ed.), 582; Allison v. Wilson, 13 S. & R. 332; Morrow v. Brenizer, 2 R. 188; Hannah v. Swarner, 3 W. & S. 230; Silverthorn v. McKinster, 2 J. 72, 12 Pa. 67; Dundas's Appeal, 64 Pa. 325; Act of March 12, 1800, P. L. 434, sec. 2; Act of February 24, 1834, P. L. 75, secs. 13, 14, 67; Woerner on Administrators, sec. 339; Evans v. Chew, 71 Pa. 47; Livingood v. Heffner, 21 W. N. C. 149; Potts, Administrator, v. Breneman, 40 W. N. C. 464.

The legal estate being in the administrator d. b. n. c. t. a., the parties, whether heirs at law or strangers, take no estate in the premises which are to be the subject of sale. An immediate and inevitable result of the direction to convert was to break the descent by vesting the estate in the executors, clothed with

power to sell, and to confer on the legatees, not an interest in the land, but simply a right to the proceeds of the sale, a mere chose in action, a claim strictly of a personal character : Willing v. Peters, 7 Pa. 287; Beatty v. Byers, 18 Pa. 105 ; Gray v. Smith, 3 Watts, 291; Craig v. Leslie, 3 Wheaton, 563; Evans v. Chew, 71 Pa. 47; Cobb v. Biddle, 14 Pa. 444.

The purpose of the will was to work a conversion, as is clearly evidenced by the explicit words used : 3 Pomeroy's Eq. Jur. sec. 1162; Bispham on Eq. sec. 320; Brolasky v. Gally, 51 Pa. 509; Hutcheon v. Mannington, 1 Vesey, Jr. 367; Elwin v. Elwin, 8 Vesey, 556; Burr v. Sim, 1 Whar. 252; Yates v. Compton, 2 P. Wms. 308; Morrow v. Brenizer, 2 R. 188; Allison v. Wilson, 13 S. & R. 330 : Allison v. Kurtz, 2 Watts, 185 ; Gray v. Smith, 3 Watts, 289; Simpson v. Kelso, 8 Watts, 247; Hess v. Shorb, 7 Pa. 231; Evans's App., 63 Pa. 183; McClure's App., 72 Pa. 414; Roland v. Miller, 100 Pa. 50; Jones v. Caldwell, 97 Pa. 45; 6 Am. & Eng. Ency. of Law, 670; Loftis v. Glass, 15 Ark. 680; Eby's Appeal, 84 Pa. 241; Hurtt v. Fisher, 1 Har. & G. (Md.) 88; Smith v. McCrary, 3 Ire. Eq. (N. C.) 204; Pratt v. Taliaferro, 3 Leigh (Va.), 419; Hancox v. Wall, 28 Hun (N. Y.), 214; Brothers v. Cartwright, 2 Jones's Eq. (N. C.) 113; Moncrief v. Ross, 50 N. Y. 431; McWilliams' Appeal, 9 Cent. Rep. (Pa.) 773; Tayloe v. Johnson, 63 N. C. 381; Kline v. Fairly, Penn (N. J.) 551; Reading v. Blackwell, Bald. (U. S.) 166.

Testator, not having made any provision for the lapsing of George W. Rudy's share, and as it was a bequest contained in the residuary clause itself, must with reference thereto be considered as dying intestate, and this share went to his heir : Hancock's App., 112 Pa. 544; Gorgas's Est., 166 Pa. 272; Jones's Est., 54 Leg. Int. 523; 3 Pomeroy's Eq. Jur. sec. 1171; Smith v. Claxton, 4 Madd. 484; Wright v. Wright, 16 Vesey, 188; Bispham on Equity, sec. 315; In re Richerson, L. R. 1 Chan. Div. (1892) 379; Carr v. Collins, 7 Jur. 165; Eastwood v. Lockwood, L. R. 3 Eq. Cas. 487; Murgitroyd's Est., 1 Brews. 317; Varner's App., 87 Pa. 422; McKeehan v. Wilson, 53 Pa. 74.

At the death of Henry Rudy, the testator, his daughter, Sarah K. Hudson, as sole heir of the testator, took a vested remainder in his entire estate as personalty, subject to the

widow's life estate, which was not divested by her death during the lifetime of the life tenant: Laguerenne's Est., 12 W. N. C. 110; Womarth v. McCormick, 51 Pa. 507; Fletcher v. Ashburner, Bro. Chan. Rep. 497; Rinehart v. Harrison, Bald. C. Rep. 177; Herbert v. Smith, 1 Saxton (N. J.) Chan. Rep. 141; Manderson v. Lukens, 23 Pa. 31; Cresson's App., 76 Pa. 19; Crawford v. Ford, 7 W. N. C. 532.

Where the gift of a legacy is independent of the direction in regard to the time of payment to the legatees, the legacy becomes vested. Time being annexed to the payment over to the legatee, not to the legacy, there is nothing to prevent the immediate vesting of the gift: Yost's Estate, 134 Pa. 434; Moore v. Smith, 9 W. 403; Cooper v. Scott, 62 Pa. 139; Penneck v. Eagles, 102 Pa. 290; Man's Estate, 33 W. N. 310; Dewart's App., 70 Pa. 404; Buckley v. Reed, 15 Pa. 83; Sager v. Galloway, 113 Pa. 509; 1 Jarman on Wills, 805, 841; Boraston's Case, 3 Rep. 19; Magoffin v. Patton, 4 R. 116; Patterson v. Hawthorn, 12 S. & R. 113; Kirk's Estate, 6 Phila. 73; Boyer v. Smith, 2 York Record, 110; Horner's App., 56 Pa. 405; Tatem v. Tatem, 1 Miles, 309; Ross v. Drake, 37 Pa. 373; Stehman's App., 45 Pa. 398; 29 Am. & Eng. Ency. of Law, 458; Theobold on Wills, 232; Little's App., 117 Pa. 27.

The added gift " to the use of such of them as may then be deceased," does not at all change the construction that there is a vested remainder in Sarah K. Hudson; that provision only defines the quantum of estate and refers to the succession of interest: Richardson's App., 19 W. N. 175; Schweikert's Estate, 40 Leg. Int. 394; Herbert v. Smith, 1 Saxton (N. J.), 141; Price v. Watkins, 1 Dallas, 8; Roper on Legacies, 376; 2 Jarman on Wills, 738.

At the death of Sarah K. Hudson (legatee in the lifetime of life tenant), her share descended to her husband as her administrator and personal representative, subject only to the life estate of the widow: Buckley v. Reed, 15 Pa. 83; Moyer's App., 16 Pa. 405.

After the death of the life tenant it is the duty of the administrators d. b. n. c. t. a. (the fee being lodged in them) to sell the real estate in conformity with the intention of the testator that it should be converted, in order that the husband and ancillary administrator, as the personal representative of Sarah K. Hudson, may claim the proceeds in the distribution under the

laws of New Jersey, where legatee died: Act of March 12, 1800, P. L. 434, sec. 2; Act of February 24, 1834, P. L. 75, secs. 13, 14, 67; Willing v. Peters, 7 Pa. 287; Parkinson's App., 32 Pa. 455.

*J. Percy Keating*, with him *B. Gordon Bromley*, for appellee.—If the court regards the language as working a vested remainder in George and Sarah ; then, inasmuch as George died in the lifetime of the testator, intestate, unmarried and without issue, the testamentary disposition must, as to his share, be deemed to have lapsed, and inasmuch as there is no provision for substitution, and no residuary clause under which such share might fall, there is an intestacy as to such share.    This share, therefore, resulted to the heir at law: Ackroyd v. Smithson, 1 Brown's Ch. 503; Collins v. Wakeman, 2 Ves. Jr. 684; Craig v. Leslie, 3 Wheat. 582; Hill on Trustees, 127 ; Ram on Assets, Ch. 3, sec. 4, p. 39.

No one can read the will without concluding that the purposes of the direction to convert (if, indeed, it was direction to convert—the words being authorize and empower) was solely to effect a division between the son and the daughter: Cruse v. Barley, 3 P. Wms. 20; Slocum v. Slocum, 4 Edw. Chan. Rep. 613; Read v. Williams, 125 N. Y. 560; Parker v. Linden, 113 N. Y. 28; Wall v. Colshead, 2 De Gex & Jones (59 Eng. Ch.), 683; Yates v. Compton, 2 P. Wms. 308; Fletcher v. Ashburner, 1 Brown's Ch. 497.

If the objects and purposes of that conversion have totally failed before the instrument directing the conversion comes into operation, no conversion will take place, but the property, so directed to be converted, will remain in its original state: Bispham's Equity, sec. 315; Snell's Principles of Equity, 149; Bagster v. Fackerell, 26 Beav. 469; Lindsay v. Pleasants, 4 Ired. Eq. N. C. 320; Chitty v. Parker, 2 Ves. Jr. 271; Story's Equity Jurisp. sec. 790.

PER CURIAM, April 4, 1898:

We find no error in the decree from which this appeal was taken.    The questions involved were fully considered and correctly disposed of by the court below; and for reasons given in its opinion the decree is affirmed and appeal dismissed at appellant's costs.