# Morris v. Knight.

*Waste—Right of life tenant to cut timber.*

Under the laws of Pennsylvania, a life tenant may cut timber for purposes of repair of the premises, or for other purposes required in the reasonable cultivation of the estate, or in the process of clearing the land for cultivation so long as the part so cleared does not cause the proportion of cleared land to timber land upon the whole tract, to exceed that which is reasonable and proper for purposes of good husbandry.

*Will—Effect of directions to convert—Real estate.*

Real estate directed to be converted, for purposes of distribution, after the falling in of a life estate, will be treated as personalty, for that purpose, but will remain unchanged as to all beyond what that purpose requires.

*Waste by life tenant—Measure of damages.*

The rights and duties of a life tenant as to standing timber and the measure of damages attending an excess of those rights, or the violation of those duties, are to be determined by the character of the estate of the life tenant. *Held*, that without regard to where, or in whom, the estates in remainder and reversion are vested, the foundation of the rule that the measure of damages in action for waste against a life tenant shall be the injury to the estate in remainder is to be found in the nature of the property and the fact that the remainderman is not entitled to possession thereof at the time of the injury.

*Felling timber—Life tenant—Measure of damages.*

In an action against a life tenant for waste in cutting and selling timber, the jury were properly instructed, as to the measure of damages, that it was not the particular value of any property or timber moved, as merchantable commodity, but the damage done to the land or inheritance which is owned by these reversioners.

It was, therefore, proper for the jury to consider the condition in which the woodland was left in determining the effect which the cutting of timber had upon the value of the inheritance.

*Waste by life tenant—Evidence.*

In an action against a life tenant by remaindermen for waste in cutting timber, evidence is properly admissible to show the character of trees cut and sold and that they were in a dying condition. The fact that the witness injected into his answer a statement that he had given the decedent advice as to her legal rights did the defendant no harm.

*Waste by life tenant—Evidence—Burden of proof—Measure of proof.*

While the presumption is in favor of the life tenant as to the use of timber this presumption only prevails until the contrary appears. This principle determines the burden of proof. The plaintiff in an action of

this character must establish to. the satisfaction of the jury, by the preponderance of the evidence not only that the life tenant has committed the acts complained of but that such acts have been injurious to the inheritance.

It is imposing however a burden not warranted by law when the trial judge instructs the jury that the plaintiff's evidence must be " clear and certain " that the life tenant had violated her duty.

Submitted April 18, 1900.    Appeal, No. 3, April T., 1900, by plaintiff E. M. Sayers in suit of Mary Morris, executrix of Asa Morris, deceased, who was surviving husband of Jane Morris, formerly Jane Zimmerman, Jesse L. Ross, administrator of Mary Ross, deceased, formerly Mary Zimmerman, and E. M. Sayers, alienee of John H. Zimmerman and Frank Vale, against Stephen Knight, executor of Mary Zimmerman, deceased, from judgment of C. P. Greene Co., Jan. T., 1894, No. 388, on verdict for defendant.    Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.    Reversed.   Opinion by W. D. PORTER, J.

Trespass.    Before CRAWFORD, P. J.

It appears from the record that plaintiffs claimed damages for a waste by life tenant, especially in the matter of cutting and selling timber.

Other material facts appear in the opinion of the court.

At the trial the court rejected the following offer of evidence by plaintiff:

[Harvey Gardner, a witness for the plaintiffs, being on the witness stand, plaintiffs make the following offer:

We offer to prove by this witness, he having already said he sawed 66,000 feet of lumber out of the timber which came off this farm, the value of this timber at the mill, for the purpose of furnishing evidence to the jury from which they may find the amount of injury done to the plaintiffs' reversionary interest in the property.

We object to the evidence as incompetent and irrelevant and as not furnishing any evidence that should go to the jury to establish the injury to the inheritance, if there was such injury by the cutting and taking away of this lumber and as a measure of damages the same is incompetent and irrelevant.

Objection sustained and exception sealed for plaintiffs.] [1]

The court admitted the following evidence for defendant against objection of plaintiff, the offer and objection being as follows :

Mr. Elias Gribben, a witness for the defendant, being on the stand, upon examination in chief was asked by the defendant's counsel as follows :

" What do you say Mr. Gribben? Well, I went to Mrs. Zimmerman and told her I would like to buy two or three trees up there, I wanted to haul them to Graysville to get palings to pale in my yard, I had them at home but did not like to haul them up that hill. She says I want you to look at a copy of the will. She went and got it and I read it and my answer was to her, her husband had a right—"

Plaintiff objects further that this is incompetent, irrelevant and self-serving and not made in the presence of these plaintiffs.

The Court: Objection overruled and exception sealed for plaintiffs.

"She asked you to read the will? Yes, sir, I read it. I says, ' Mrs. Zimmerman, if your husband had a right to sell the timber on this farm the way he left it you surely have a right. As I understand this, you stepped right in his shoes.' What did she say about the trees ? The trees up on the point towards— She says I want you to take the trees that are dying in the top. Some one had told her that nice poplar trees had their tops dying. She wanted me to take them which I did. Which you did? Yes, sir. Your land nearly joins this ? Yes, sixty acres between me and it."

Defendant presented among others the following points :

[1. The presumption of law is that Mrs. Mary Zimmerman, the life tenant, in cutting the timber on the Thomas Zimmerman land cut only such kind and quantity as would do no injury to the inheritance, and before a verdict should be rendered charging her with damages for cutting such timber, the evidence should be clear and certain that she has violated her duty in this regard. *Answer :* That point is correct and is affirmed.] [3]

[2. The plaintiffs are not entitled to recover in this action the value of the timber cut by defendant's testate on the land, but the inquiry of the jury must be as to whether the cutting of such timber injured the inheritance and if they find that it did no injury to the inheritance the plaintiffs are not entitled to recover. *Answer :* That point is correct and is affirmed.] [4]

[4. If the jury believes from the evidence that the land willed by Thomas Zimmerman to his wife for his life had too much woodland upon it, the life tenant is justified in clearing portions thereof providing she does not go beyond or exceed the proper proportions that the timber land should bear to the part cleared, taken as a whole, and if the jury believes from the evidence that Mrs. Zimmerman did not go beyond such proper proportions the plaintiffs are not entitled to recover. *Answer:* That point is correct if you find the facts as they are stated, but that is a question of fact for you, gentlemen of the jury, under the entire evidence of the case as to what was a proper proportion of timber for that land, and whether or not its removal was consistent with her claim or whether it was as alleged by the plaintiffs here, an act of waste doing damage to them and the other reversioners. In connection with that you will remember all that has been testified to by the different witnesses in the case. As I recall the testimony, the land was not really cleared, but the contention here is, that that was the intention of the life tenant, but her death prevented that from being followed out; but you have all the facts before you for the determination of that particular part of the case.] [5]

[5. If the jury believes from the evidence that all the timber, or any portion thereof was cut by the life tenant to repair the fences and buildings upon the land, the defendant is not liable in damages for cutting such timber, in so far as the same was used for that purpose. *Answer:* That point is correct and is affirmed. We have already said to you they have a right to use sufficient timber for the necessary repairs and improvement of the farm consistent with good use and husbandry, but as I recall the evidence here there is no claim that all the lumber cut there went for that purpose ; considerable lumber was sold. On that branch of the case they rely upon their theory of clearing the land. But all the lumber that went into the necessary repairs was used properly by the life tenant. That position is correct.] [6]

The court charged the jury in part as follows:

[Gentlemen of the jury, in that connection we wish to say to you this : that the measure of damages which will govern your action in this case, if you find a verdict in favor of the

plaintiff will be this : the damage done to the estate or the land, not the value of the lumber taken away as a commodity itself, but the difference in the value of the land before and after that lumber was taken off, or after this use by the life tenant.] [7] . . . .

[Now keep these facts before you in determining this issue that we called your attention to.  The measure of damages being as we have already said to you, not the particular value of any property or timber removed as merchantable commodity, but the damage done to the land or inheritance which is owned by these reversioners, the plaintiffs, the entire damage done. Her acts are all introduced as going to show you how the value of the land was affected.  Now you will make up your judgment upon those facts in that way.] [8] . . . .

[If there has been no injury, no devastation or waste there affecting the value of this inheritance, or in other words if that estate was passed over to Mr. Sayers and the other parties interested, its value not affected by her acts, allowing for reasonable wear and tear of it, then there would be no damage sustained here and there ought to be no recovery on the part of the plaintiffs.] [9]

Verdict and judgment for defendant.  Plaintiffs appealed.

*Errors assigned* were (1, 2) to rulings on evidence, reciting same.   (3–6) Answers to defendant's points, reciting points and answers.   (7–9) To portions of the general charge, reciting same.

*James E. Sayers*, with him *A. F. Silveus*, for appellant.—The plaintiffs have a revisionary interest in these lands as personalty at the death of Mary Zimmerman, and anything that was attached to the soil, in the way of timber or buildings, remained unchanged as to all other purposes during the period of the life tenant: Hudson's Appeal, 185 Pa. 359 ; Worsley's Estate, 36 W. N. C. 247.

Therefore we hold that cutting down the valuable timber trees and the taking of the same off the premises and using them and selling them off the premises in the way of lumber was a direct damage and injury to the plaintiffs.

The refusal of the court to allow this testimony took away from the plaintiffs the only method in which they could ascertain their damages, aside from showing what the land was worth with the timber on and with it cut off, which method was unfair and not according to law.

We base this assertion upon the law as laid down by the Supreme Court of our state in the case of McCollough v. Irvine, 13 Pa. 438.

The third assignment of error is an exception to the rulings of the court below on the plaintiffs' first point. The chief objection to the point is the ruling of the court and the direction to the jury, " that the evidence should be clear and certain that she has violated her duty in this regard." It relates to the fact of the life tenant cutting timber of only such kind and quantity as would do no injury to the inheritance. We hold that this is not good law. We admit that the burden of proof in the first instance is on the plaintiffs in this case. It being shown by competent testimony that the cutting of the timber and other acts of waste complained of had been committed, it was then the duty of the defendant to rebut such testimony by competent evidence; and the court should have told the jury that the burden of proof was on the plaintiffs to establish the facts set up in their declaration by a preponderance of evidence that would satisfy the jury of their claim.

But when the actor in either relation establishes a prima facie case and it is met by evidence sustaining good faith on the other side, then the case must be decided on the merits : 2 Wharton's Evidence (2d ed. 1879), sec. 1248.

If, to a tort, justification is set up by the defendant, the burden is on him to prove such justification : 1 Wharton's Evidence, sec. 358.

These rules would have left the case to the jury upon the merits. The rule as laid down by the court in this point, being that the evidence should be " clear and certain," amounts to the rule that the plaintiffs' claim should be proved " beyond a reasonable doubt." This is going far beyond any reported cases.

*D. S. Walton*, for appellee.—In the case of Yocum v. Zahner, 162 Pa. 468, the Supreme Court says :

" The remedy for a remainder-man on whose inheritance waste is being committed, is not in trespass, but in case, for the recovery of damages for the injury done to the freehold."

In the case of Sayers v. Hoskinson, 110 Pa. 473, a case in which this appellant was the plaintiff in error, the Supreme Court says :

" It is not waste for a life tenant to cut and fell dead and decaying timber which would otherwise become worthless before the life estate fell in.

" An action for waste by a reversioner is founded upon damage done to the inheritance, and as the cutting of such timber would tend to enhance rather than diminish the value of the same by making room for new timber, there can be no recovery for such action.

" The common-law rule as to what constitutes waste has been much relaxed in this state, especially in regard to timber.   A life tenant may here cut down trees if they impede cultivation and good husbandry requires their removal."

Surely he would not insist upon a verdict in his favor upon testimony that was not clear and certain.   The court's instruction as found in its answers to the points, must be read in connection with its general charge.   It is not good law, nor good practice either, to take a few extracts from a charge or from answers to points for the purpose of securing the reversal of a cause.

OPINION BY W. D. PORTER, J., July 26, 1900 :

Thomas Zimmerman, by his last will and testament, dated October 31, 1859, devised all his estate to his wife, Mary Zimmerman, defendant's testatrix, during her natural life or widowhood.   The estate, subject to the devise to the widow, passed under the following clause, viz :  " Then I direct that all my estate to be equally divided among my four children, Elizabeth, Jane, Mary and John Henry, after the said John Henry is schooled and raised till he is twenty-one years old, which is to come out of my estate, and the estate to be sold and be equally divided as above, except my son, John Henry, to have $500 more than my daughters, after he is schooled and raised till twenty-one years of age, which I will to my wife during her lifetime, and at her decease, or if she should marry, then I di-

rect all my estate to be sold and divided as above directed."
Thomas Zimmerman died in November, 1859; his widow en-
tered into possession of the farm with regard to which this
controversy has arisen, and, remaining unmarried, continued
such occupancy until her death, in 1891. E. M. Sayers, the
appellant, in 1881, purchased the interest of the daughter,
Elizabeth, and, in 1886, that of the son, John H. Zimmerman,
which passed to them, respectively, under the will of their fa-
ther, in the real estate in question. In 1894, plaintiffs brought
this action of trespass, and, in the declaration upon which they
went to trial, alleged that Mary Zimmerman, in her lifetime
and while in possession of the said lands as life tenant, did cut
certain timber, without any legal right as life tenant of said
lands so to do; and did abuse said premises and suffer the
buildings and fences to go down into a state of dilapidation
and decay, thereby causing injury to the lands by her wanton
neglect and bad husbandry. These things were, in the declar-
ation, charged to have been done and suffered "all to the pre-
judice and injury of the revisionary interest of the plaintiffs
in the premises and property aforesaid." It thus appears
that while in accordance with the requirements of the Act of
May 25, 1887, P. L. 271, this was in form an action of trespass;
the plaintiffs declared for an injury to their inheritance result-
ing from the acts of the life tenant, and that prior to the act
in question the form of action would not have been in trespass,
but in case. The main controversy in the court below involved
only the rights of the life tenant to cut timber, and the measure
of damages when those rights were exceeded. It cannot be
questioned that under the law of Pennsylvania a life tenant
may cut timber for purposes of repair of the premises, or for
other purposes required in the reasonable cultivation of the es-
tate, or in the process of clearing the land for cultivation, so
long as the part so cleared does not cause the proportion of
cleared land to timber land, upon the whole tract, to exceed
that which is reasonable and proper for purposes of good hus-
bandry: Hastings v. Cruckleton, 83 Yeates, 261; McCullough
v. Irvine, 13 Pa. 438; Sayers v. Hoskinson, 110 Pa. 473.
When the tenant for life exceeds his legal rights in the cut-
ting of timber, the measure of damage is not the value of the
timber after it has been delivered at some distant mill, or man-

ufactured into a finished product, but it is the injury done to the freehold: Yocum v. Zahner, 162 Pa. 468, and cases above cited. And this is the rule whether the timber simply be cut down and destroyed, or, after being cut down, be sold: McCullough v. Irvine, supra. The question is whether the act of the life tenant has injured the interest of the remainderman in the land. That these rules apply generally as between life tenants and the owners of the inheritance is conceded by the appellant, but he contends that because this will directed the estate in remainder to be sold and the proceeds thereof distributed among the children of the testator in a certain manner, that thereby a conversion of the estate in remainder was wrought, and, therefore, this case is taken out of the general rule. His contention is that as the interest of the children, to which he has succeeded, was the right to receive the proceeds realized from a peremptory order to sell, contained in the will, that their interest in this land was personal property, and that therefore they have a right to maintain an action as for an injury done to their personal estate. This position of the appellant is untenable for several reasons. Real estate directed to be converted, for purpose of distribution, after the falling in of a life estate, will be treated as personalty for that purpose, but will remain unchanged as to all beyond what that purpose requires: Worsley's Estate, 36 W. N. C. 247; Rudy's Estate, 185 Pa. 359.

The estate of defendant's testatrix in this farm was a life estate, a freehold not of inheritance, and to that estate appertained all the rights and duties which a life tenant may assert against and owes to the estates in remainder and reversion. If the trees had been reserved out of the devise for life, or if the remainder in the woodland had gone to one person and the remainder in the cultivated land to another, an entirely different question would have been presented: Greber v. Kleckner, 2 Pa. 289. The life estate included the entire tract, and the reversions and remainders and all interest created under the will included alike land and timber. No question could arise under the will as to whether the life tenant might so use the estate as to benefit one remainderman, to the injury of another. The life tenant being in possession, and those who were to receive the proceeds of the sale of the land, after the termination

of the life estate, never having at any time been in possession of the property, they could not have maintained trespass for the cutting of this timber: Greber v. Kleckner, supra; Clark v. Smith, 25 Pa. 137; McIntyre v. Coal Company, 118 Pa. 108; Addleman v. Way, 4 Yeates, 218; Collins v. Beatty, 148 Pa. 65. The rights and duties of the defendant's testatrix and the measure of damages attending an excess of those rights, or violation of those duties, were to be determined by the character of the estate which she herself held, without regard to where, or in whom, the estates in remainder and reversion were vested. The foundation of the rule that the measure of damages in an action for waste against a life tenant shall be the injury to the estate in remainder, is to be found in the nature of the property and the fact that the remainderman is not entitled to possession thereof at the time of the injury. The question is how do the acts which are alleged to constitute waste affect the interest of him who is to receive the land, or its proceeds, upon the termination of the tenancy for life? If the remainderman is entitled to all of the land, or its entire proceeds, after the termination of the life estate, it can make no difference whether, according to technical rules of construction, his interest in the land be real estate or personal property. These trees were not such personal property of the appellant as to enable him to support an action of trespass for their removal. He never had been in possession of the trees, and, under the terms of the will, he could not become entitled to possession until the termination of the life estate. If, upon the termination of the life estate, all the heirs elected to retain the land, immediately upon such election their interest would have become real estate. The will in the present case is almost identical in its language with that which was passed upon by the Supreme Court in Lynn's Appeal, 31 Pa. 44. In that case a life estate was devised to the widow, and after her death the property was directed to be sold and the proceeds divided among his children, deducting certain sums advanced by the testator to several of them. It was there held that the life tenant had the right to cut timber in the process of clearing land, or for other purposes required in the reasonable cultivation of it, or for keeping the premises in repair. The measure of damages contended for in the court below by the appellant can find no support in reason

or authority, and the first, fourth, seventh, eighth and ninth specifications of error are dismissed.

The evidence admitted under the ruling, which is the subject of the second assignment of error, was to the effect that the witness had made an arrangement with the decedent to take certain poplar trees which were dying at their tops, and that he had taken trees in that condition, in accordance with the arrangement. It was proper for the defendants to show that the decedent had sold to the witness trees of this character only and that he, in cutting the timber, took only such trees as were in the condition specified. The character of the timber taken was material to the question to be decided by the jury, and it was competent to establish by this witness that the trees which he had bought and took were in a dying condition: Sayers v. Hoskinson, supra. The fact that the witness injected into his answer a statement that he had given the decedent certain advice as to her legal rights did the defendants no harm. They did not move to strike out the evidence so injected, and which was not responsive to the question. The court fully and accurately defined the rights of the decedent under the will, and the jury could not have been misled by the statement of the witness as to what were his erroneous views upon the law. The second assignment of error is without merit.

The fifth specification of error refers to the answer of the court to the fourth prayer for instruction submitted by the defendants. The point submitted was a correct statement of the law, if there was any evidence in the case which would have sustained a finding of the facts, therein stated, by the jury. The court, in effect, said this much to the jury, but added: "As I recall the testimony, the land was not really cleared, but the contention here is that that was the intention of the life tenant, but her death prevented that from being followed out; but you have all the facts before you for the determination of that particular part of the case." In view of the fact that the court in charging the jury as to the measure of damages said, "The measure of damages being, as we have already said to you, not the particular value of any property or timber moved as merchantable commodity, but the damage done to the land or inheritance which is owned by these reversioners, the plaintiffs, the entire damage done. Her acts are all introduced as

going to show how the value of the land was affected." The plaintiffs having introduced evidence tending to establish that the manner in which the cutting of timber was done indicated that the intention was not to clear the land for cultivation, and the defendants having introduced evidence tending to corroborate the opposite theory. It was not disputed that the clearing had not been completed to such an extent as to permit of cultivation at the time the life tenant died. It was, therefore, proper for the jury to consider the condition in which this woodland was left in determining the effect of that cutting of timber upon the value of the inheritance. The fifth specification of error is dismissed.

The sixth specification refers to the answer of the court to the fifth prayer for instruction submitted by the defendants. That a life tenant has the right to cut timber for the purpose of repairing the fences and buildings upon the land is clearly established by the authorities above cited. The affirmance of the point which asked the court to so charge was free from error as a legal proposition, and it certainly did the plaintiffs no harm for the court to add, "But, as I recall the evidence here, there is no claim that all the timber cut there was for that purpose. Considerable lumber was sold. On that branch of the case they rely upon their theory of clearing the land. But all the lumber that went into the necessary repairs was used properly by the life tenant. That point is correct." The sixth assignment would not justify a reversal.

The third assignment of error raises a question which is more serious. The defendants requested the learned court below to charge, "First: The presumption of law is that Mrs. Mary Zimmerman, the life tenant, in cutting the timber on the Thomas Zimmerman land, cut only such kind and quality as would do no injury to the inheritance, and before a verdict should be rendered charging her with the damages for cutting such timber the evidence should be clear and certain that she had violated her duty in this regard." This point was affirmed without qualification. The rule undoubtedly is that the presumption is in favor of the tenant for life until the contrary appears. This principle determines the burden of proof. The plaintiff in an action of this character must establish to the satisfaction of the jury, by the preponderance of the evidence,

not only that the life tenant has committed the acts complained of, but that such acts have been injurious to the inheritance. All this must be established by the weight of the evidence. The language used in this prayer for instruction went beyond this. The word " certain," as here used, would, to the average man, convey the impression that it referred to the effect produced upon the mind or judgment of him who heard the evidence; and that the minds of the jurors must be free from doubt in order to justify a finding in favor of the plaintiffs. This was imposing upon the plaintiffs a burden not warranted by law. This specification of error must, therefore, be sustained.

Judgment reversed and venire facias de novo awarded.