---

(No. 11200.—Reversed and remanded.)
F. EVA CONKLIN, Appellee, *vs.* GEORGE R. NEWMAN *et al.* Appellants.

*Opinion filed April 19, 1917.*

1. TRESPASS—*action of trespass should not be submitted to jury on theory of tenancy in common.* In an action of trespass *quare clausum fregit* for cutting down the south half of a hedge fence between two forties, the plaintiff, in order to recover, must show that such half was appurtenant to the forty owned by her; and the court should not submit the case to the jury upon the theory of an ownership of the hedge in common, as one cannot be guilty of committing a trespass upon property which he owns in common with another.

2. SAME—*evidence that land is worth more because of the trespass should not be received.* In an action of trespass *quare clausum fregit* for the destruction of a hedge fence between adjoining proprietors, evidence that the plaintiff's land is worth more after the trespass than it was before is not admissible, for if a trespass was committed and property of value appropriated the plaintiff is entitled to recover, without regard to what effect the trespass had upon the property as a whole.

3. SAME—*what is a proper element of damages for trespass for cutting down a hedge fence.* Damage to a corn crop from cutting down a hedge fence because the plaintiff was thereby prevented from turning hogs loose in the field in the spring to destroy the noxious weeds that injured the corn is a proper element to be considered in estimating damages in an action of trespass *quare clausum fregit* for cutting away the hedge.

4. SAME—*when damages for cutting down a hedge fence should not include its value as a wind-break.* In an action of trespass

*quare clausum fregit* for cutting down a hedge fence, damages on account of its value as a wind-break should not be considered, where it does not appear that at the time of its destruction the hedge fence afforded any protection as a wind-break to any orchard or buildings on the plaintiff's land within the meaning of the proviso to section 3 of the Fences act.

5. SAME—*owner out of possession can recover only damages to reversionary interest*. In an action by the owner for trespass to land in possession of a tenant the plaintiff can recover only for the damage to the reversionary right and interest and is not entitled to recover for damage to the possessory right of the tenant.

6. SAME—*when dower right of widow does not affect plaintiff's right to damages for trespass to land*. Where a husband conveys land without his wife joining in the deed, in an action of trespass *quare clausum fregit* prosecuted by the grantee after the grantor's death for a trespass committed during his lifetime, the plaintiff's right of recovery and the measure of damages are not affected by the widow's dower right, as she had no reversionary interest in the land at the time the trespass was committed.

7. FENCES—*when agreement apportioning fence ceases to be effective*. An agreement apportioning a hedge fence between two tracts of land owned by different persons, making the north half of the fence appurtenant to one tract and the south half to the other, ceases to be effective when the ownership of the two tracts vests in one person.

APPEAL from the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding.

WILLIAMS & WILLIAMS, and WILLIAM & BARRY MUMFORD, for appellants.

L. T. GRAHAM, and ANDERSON & MATTHEWS, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

Appellee, F. Eva Conklin, recovered a judgment for $200 in the circuit court of Pike county against appellants, George R. Newman and Lee Newman, in an action of trespass *quare clausum fregit*. Appellants prosecuted an appeal from that judgment to the Appellate Court for the

Third District, but the Appellate Court transferred the appeal to this court.

The declaration charged that the appellants, on January 15, 1915, with force and arms broke and entered the close of the plaintiff, to-wit, the southeast quarter of the northeast quarter of section 16, township 4, south, range 3, west, in Pike county, Illinois, and cut down and destroyed 500 hedge trees and a certain fence belonging to appellee situated on said land. Appellants filed a plea of not guilty, a plea of license from Benjamin Newman, now deceased, who, the plea alleges, was then the owner and entitled to the possession and control of the premises described in the declaration, and a plea of *liberum tenementum.* Issues were joined on these three pleas and a trial was had before a jury, which resulted in a verdict for $200 in favor of appellee, upon which judgment was rendered.

The controversy here arises over the act of appellants in cutting down the south half of a hedge fence which for many years prior to February, 1915, stood upon the line between the southeast quarter of the northeast quarter of said section 16 (hereinafter referred to as the east forty) and the southwest quarter of the northeast quarter of said section 16 (hereinafter referred to as the west forty). On and prior to February 13, 1866, both of these forty-acre tracts belonged to a man named Teadrow. On February 13, 1866, Teadrow conveyed the west forty to Benjamin Newman, and on February 15, 1866, conveyed the east forty to Oliver P. Rice. When these conveyances were made there was a hedge fence on the north half of the line and a wooden fence on the south half of the line between the two tracts. In 1868 Benjamin Newman, the owner of the west forty, removed the wooden fence and set out a hedge fence on the south half of the line between the two tracts. Thereafter, during the separate ownership of the tracts, Benjamin Newman trimmed and otherwise cared for the hedge fence on the south half of the line and Rice

trimmed and looked after the hedge fence on the north half of the line. In December, 1888, Rice conveyed the southeast quarter of the northeast quarter of said section 16 to Benjamin Newman, the latter thereby becoming the owner of both tracts. Thereafter, during the ownership of both tracts by Benjamin Newman, he required the tenants of the west forty to take care of the south half and the tenants of the east forty to take care of the north half of the hedge fence on the line between the two tracts.

On June 22, 1904, Benjamin Newman executed and delivered to his daughter, F. Eva Newman, the appellee, who has since married J. O. Conklin, a warranty deed, conveying to her two hundred acres of land, including the southeast quarter of the northeast quarter of said section 16, referred to herein as the east forty, but not including the tract referred to herein as the west forty. This deed contained the provision that "this deed is not to take effect until after the death of the grantor, Benjamin Newman." The wife of Benjamin Newman, who is still living, did not join in the conveyance. At the same time appellee executed and delivered to her father the following written instrument signed by her: "Whereas Benjamin Newman has this day conveyed to me certain tracts and parcels of land in Pike county, Illinois, to take effect after his death, I hereby agree to pay the taxes on said land in lieu of all rents that I would otherwise have to pay, (this does not affect any rent that is now due,) and in consideration of my paying said taxes I am to receive all the rents, profits, etc., that may accrue on said land." When the conveyance was made to appellee the tract in controversy known as the east forty was in the possession of Joseph Gifford as tenant and the west forty was in the possession of John B. Newman, a grandson of Benjamin Newman, as tenant of Benjamin Newman. The testimony offered by appellee tends to prove that when her father delivered the deed of June 22, 1904, he took her upon the east forty and told her and Gifford,

the tenant, that he was placing her in full possession of the tract; that she was to receive all the rents and profits from the land and was to keep up the repairs and pay the taxes; that she was to have the south half of the fence on the line between the east forty and the west forty and was to keep up that part of the fence, and that George Newman, his son, to whom he then intended to deed the west forty, should keep up the north half of the fence, and that thereafter appellee and her tenants kept the south half of the fence in repair while the tenants in possession of the west forty made repairs to the north half of the fence. The evidence offered by appellants, on the other hand, tended to prove that after the delivery of the deed and delivery of possession of the east forty to appellee, Benjamin Newman told his tenants of the west forty, and as late as September, 1913, stated to appellants and others, that the north half of the fence belonged to the east forty and the south half to the west forty.

On September 19, 1910, Benjamin Newman executed and delivered to appellant Lee Newman, a son of appellant George R. Newman and a grandson of Benjamin Newman, a lease to the west forty from March 1, 1913, to the first day of March after the death of Benjamin Newman, in consideration of the agreement of the lessee to pay the taxes assessed against the land each year. At the same time he turned over and delivered to Lee Newman a warranty deed dated February 11, 1908, whereby he conveyed to his son, George R. Newman, the tract known as the west forty for life and the remainder to the children of George R. Newman. This deed also contained the provision that it should not take effect until after the death of the grantor. It was not signed by the grantor's wife, and it seems to have remained in the possession of the grantor until it was delivered to Lee Newman, who in 1914 filed it for record.

During the month of January, 1915, a controversy arose between appellee and appellants regarding the ownership of

the hedge fence, each party claiming the south half of the fence. During the month of February, 1915, appellants, over the protest of appellee, cut down the south half of the hedge fence on the line between the east forty and the west forty and erected a wire fence in the place thereof. On March 14, 1915, Benjamin Newman died testate. He left a widow surviving who was his wife at the time the deeds above mentioned were executed and delivered, and the widow renounced the provisions made by the will for her benefit. Thereafter, in June, 1915, appellee brought this suit.

Appellants contend that under the undisputed facts in the case the south half of the hedge fence between the two forties was appurtenant to the west forty, and that the trial court erred in adopting the theory of an ownership in common by the adjoining proprietors. It is evident from this record that the south half of the fence was not appurtenant to the west forty at the time of its destruction by appellants. It is undisputed that during the time Benjamin Newman owned the west forty and Rice owned the east forty, Benjamin Newman owned and maintained the south half of this fence as appurtenant to the west forty. When he acquired title also to the east forty, and thus became the owner of the whole eighty-acre tract, the two portions of this fence ceased to be appurtenant to any particular parts of the tract, and any agreement and division that had theretofore been made while the ownership of the two forties was in different persons ceased to exist or to be effective. The court, however, did err in submitting the case to the jury upon the theory of an ownership in common by the adjoining proprietors, not because the undisputed facts in the case show that the south half of the hedge fence was appurtenant to the west forty, but because appellee was not entitled to recover damages from appellants in an action of trespass *quare clausum fregit* for the destruction of the hedge fence if the hedge was owned in common by appel-

lants and appellee. It is elementary that one tenant in common cannot be guilty of committing a trespass upon property which he owns in common with another. Appellee offered evidence tending to show an agreement between her and her father by which the south half of the division fence was set off to her as the owner of the east forty. If she established such agreement to the satisfaction of the jury she was entitled to recover, (*D'Arcy* v. *Miller,* 86 Ill. 102; *Hill* v. *Tohill,* 225 id. 384;) otherwise she was not entitled to recover in this suit.

The court refused to admit evidence offered by appellants to show that the east forty was, in fact, worth more after the hedge was cut than it was before, and appellants complain of this action of the court. The evidence was properly refused. Even though the removal of the hedge might be beneficial to appellee's farm as a whole, still the hedge contained material of value which was appropriated by appellants, and if she was the owner of the south half of the hedge she is entitled to recover for it. Appellee has the right to manage her own farm as she sees fit, and appellants do not have the right to interfere with that management and dictate what will or will not be beneficial to her land. If they committed a trespass and appropriated property of value she is entitled to recover for that without regard to what effect, if any, the result of the trespass has upon her farm as a whole.

Malcolm Douglas has been in possession of appellee's land as tenant under a written lease since 1912. This lease was admitted in evidence. By its terms Douglas pays cash rent for the pasture land and grain rent for such land as is put in crops. Appellee was permitted to prove damages for the loss of the use of her lands by throwing them open and for the loss of the hedge fence as a wind-break. At the time the hedge was cut and the land left open or fenced only by a fence consisting of three barbed wires, the lands of appellee east of this fence, with the exception of a few

rods on the north end, were cultivated and planted in corn. The testimony on behalf of appellee tended to prove that this land was infested with morning-glories and wild potato vines, and that it was the custom of the tenant, in breaking it up in the spring, to plow a few furrows and then turn his hogs into the field to allow them to eat and destroy the roots of these noxious weeds; that in the spring following the cutting of the hedge he was not able to turn his hogs into this field because the fence had been taken away and the three wires erected in its stead were not a sufficient fence to confine hogs; and that the damage to the farm on account of the land being thus thrown open was $50, being the damage to the corn crop by reason of the failure to destroy these vines. This was a proper element of damage, as appellee received a portion of the corn for her rent.

The tenant and others testified that the farm had been damaged $50 a year by the loss of the hedge fence as a wind-break. This was not a proper element of damage to be considered by the jury. Section 3 of the Fence act, after providing that each of the adjoining land owners shall make and maintain a just proportion of the division fence, and that if such fence be a hedge fence it shall be cut back or trimmed at certain intervals, contains the following proviso: "*Provided,* that the provisions of this section shall not apply to any hedge fence protecting either an orchard or buildings or wind-break, not to exceed thirty rods." It does not appear that at the time of its destruction the hedge fence in controversy afforded any protection as a wind-break to any orchard or buildings on appellee's land. It was therefore not within the proviso contained in said section 3, and no damages should have been allowed on account of its loss as a wind-break. (*Hill* v. *Tohill, supra.*) Moreover, the tenant had been in possession from the time the fence was removed until suit was brought, and if appellee had the right to maintain this hedge as a wind-break, as she claims, the loss during that period was that of the tenant and not

of appellee. Appellee had the right to recover only for the damage to her reversionary right and interest, and she was not entitled to recover for any damage done to the possessory right of her tenant.

The court instructed the jury that in order to constitute peaceable possession it was not necessary for appellee to be personally farming her land, but possession of her tenant under a written lease was her possession in the meaning of the law. This instruction was erroneous and prejudicial in view of the testimony admitted as to the damage caused by loss of the alleged wind-break. It was not warranted by section 36 of the Practice act, as appellee contends. By that section of the statute it is made lawful for any owner of real estate, though not in possession, where the same is in possession of some person claiming under him as tenant or otherwise, to bring an action for any injury to his rights in such land as owner. This section permits the owner out of possession to bring an action for only such damages as affect the right of the owner, and the section further provides that nothing therein shall deprive the person in possession of any right of action he may have for injury to his possession.

It is finally contended that the court should have instructed the jury, as requested by the appellants, that they should not award the plaintiff any damages for any injury to the dower right of the widow of Benjamin Newman or to the land subject to such dower. At the time of the alleged trespass Benjamin Newman was still living and his widow then had no reversionary interest in the east forty. The subsequent death of Benjamin Newman before suit brought did not give her any right of action for the alleged trespass, nor did it limit or restrict appellee's right of recovery or affect the measure of damages.

For the errors indicated the judgment is reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*