**Daisy H. Harts (Complainant), Appellant, v. Arnold Brothers (Defendant), Appellee.**

**Gen. No. 29,144.**

1. LANDLORD AND TENANT—*construction of lessee's covenant of liability to lessor for additional insurance premiums from more hazardous use of premises.* Under a covenant in a lease whereby the lessee agreed to reimburse the lessor if the use made of the premises caused the lessor to pay or become liable to pay any additional rate of insurance, the lessee was not liable for additional premiums the lessor became liable to pay on adjoining or connected buildings, not included in the lease, because of the use made by the lessee of the leased premises.

2. DAMAGES—*proper measure for breach of lessee's covenant against unauthorized alterations.* The proper measure of damages in favor of the lessor of a building for numerous alterations made by the lessee without authority is the reasonable cost of restoring the buildings to the condition they were in when they were entered upon by the lessee, ordinary wear and tear excepted, rather than the decrease in the market value of the premises by reason of the

waste, though the suit was begun before the expiration of the lease.

3. LANDLORD AND TENANT—*rights of lessor against lessee for unauthorized alterations.* Where waste was committed by a lessee of a building by making unauthorized alterations to make the building more convenient for the purposes to which he put it the lessor, in a suit to recover therefor brought before expiration of the lease, should not be required to expend the damages recovered in repairing the building for the benefit of the lessee during the remainder of the term.

Appeal by complainant from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1924. Affirmed in part, reversed in part, and remanded with directions. Opinion filed January 26, 1925. Rehearing denied February 9, 1925.

BURKE, JACKSON & BURKE and EDWIN B. HARTS, for appellant.

E. A. ZIMMERMAN, for appellee.

MR. JUSTICE JOHNSTON delivered the opinion of the court.

This is a suit in equity brought by the complainant, Daisy H. Harts, against the defendant, Arnold Brothers, a corporation, for alleged breaches by the defendant of covenants in leases from the complainant to the defendant of certain premises occupied by the defendant.

The prayer of the bill of complaint was for an accounting and for an injunction. On hearing before the court the court entered a decree November 25, 1922, in which the court found in favor of the complainant, granted an injunction, and referred the cause to a master for an accounting. The master reported on the accounting and the court entered a decree November 14, 1923, confirming the report in part and disapproving it in part. The complainant has appealed from the decree of November 14, 1923.

It will be unnecessary to state the allegations of

the bill of complaint and the facts, as the substance of the bill and the facts are set out in the decree of November 25, 1922. The material parts of the decree of November 25, 1922, are as follows:

"That previous to October 27, 1915, the complainant was, and now is, the owner of the contiguous premises described in the bill of complaint herein as the three-story and basement brick building known as numbers 667 and 669 West Lake street and the three-story and basement brick building known as number 666 Eagle street and the two-story brick building known as number 668 Eagle street, which said two Eagle street buildings the complainant demised to the defendant by two written leases, both expiring April 30, 1920, and dated, as to the said two-story building, on October 27, 1915, in which lease the premises therein demised were described as the 'Barn,' and dated, as to the said three-story building on January 25, 1917. That in each of said leases the defendant, as lessee thereunder, covenanted that it had received the said premises in good order and condition and would keep the said premises in good order at its own expense.

"That the said Barn, previous to October 27, 1915, was used as a barn for the caring of horses and the storage of vehicles and to that end was furnished with stalls, feed rooms and feed boxes on the second floor and was used by the defendant, from the date of the lease thereto, first for the caring of horses and the storage of wagons and later for the storage of automobiles until about November, 1920, and the said three-story building was used by the defendant for a warehouse from the date of the lease thereto until about November, 1920, and both buildings were so used by the defendant on October 23, 1919.

"That on October 23, 1919, the complainant and the defendant executed a third lease to both of the said Eagle street buildings for a term commencing on May 1, 1920, and ending on April 30, 1925; in and by which last lease the defendant covenanted that it had received the said premises in good order and con-

dition and would keep the said premises in good order at its own expense and, at the termination of the said lease it would yield up the said premises in as good condition as when entered upon, less loss by fire and inevitable accident and ordinary wear and tear. It was also covenanted in and by the said lease that the defendant would not use the said premises in any manner which would increase the then rate of insurance thereon and if it did so use the said premises it would reimburse the complainant for any additional premium of insurance she might pay or become liable to pay by reason of such use, upon demand.

"That after the execution of the first said lease to the said Barn and previous to October 23, 1919, without the knowledge or consent of the complainant, the defendant removed from the said Barn the first floor north partition wall, eighteen or nineteen stalls then on the second floor, together with the iron drains and iron drain pipes which had been installed properly to drain the said stalls, the feed rooms and feed boxes and the other equipment of the said second floor, the runway from the first to the second floor, the office partitions of the first floor with the door and windows therein and not less than thirty feet of the joists and flooring of the said second floor and cut holes in the roof of the said barn.

"That from November, 1920, to the date of the filing of the bill of complaint herein, without the knowledge or consent of the complainant, the defendant was engaged in installing a soap factory in the two Eagle street buildings and in the course of installing said soap factory it removed part of the first floor of the Barn and constructed concrete foundations for two iron tanks and erected on such foundations two iron tanks ten feet in diameter and twelve feet high, and in the said three-story building it removed the stairway from the basement to the second floor and constructed a stairway from the basement to the second floor at the south end of the building, it cut holes in each of the three floors of the said building varying from one square foot to sixty-four square feet in area, it cut holes varying from four feet square to nine

square feet in area in the east brick wall, it enlarged the doorway, by cutting away brick from each side thereof, it cut holes in the concrete floor of the basement and cut holes for passageways and for chutes in the westerly or partition wall of the three-story building; all of which doings the court finds to be commissive waste, committed by the defendant.

"That on the date of the filing of the bill of complaint herein (Nov. 28, 1921) the defendant was engaged in furthering the installation of the said soap factory and on the day following the filing of the bill of complaint herein the defendant had on the said premises sand and other building materials and workmen were engaged in building a chute in the partition wall of the two Eagle street buildings.

"That the rate of insurance on the two Eagle street buildings on October 23, 1919, was ninety cents for each one hundred dollars of insurance and that insurance could be written for five years at an annual rate of sixty cents for each one hundred dollars of insurance. And the court further finds that the installation and operation of the said soap factory in the said Eagle street buildings has increased the rate of insurance thereon to one dollar and four cents for each one hundred dollars of insurance, which rate applies to all the buildings of the complainant, and that by reason of such occupancy it is not possible to write insurance for a longer term than one year at any reduction of such annual rate. But the court specially finds that by reason of the provisions of the lease dated October 23, 1919, the complainant cannot have the relief prayed for, in so far as it relates to an injunction to prevent an increase of insurance rates on said Eagle street buildings, except that the complainant should have an accounting for any additional insurance premiums paid by her on account of such soap factory.

"That the alterations made by the defendant did not tend, in any way, structurally, to weaken the buildings in or to which the said alterations were made, that the said premises can be restored to their original condition, and that the 'I' beams placed by the de-

fendant under the second and third floors of the three-story building strengthened the said floors and thereby strengthened the building.

"The court further finds that the defendant has permitted and committed waste in the said Eagle street buildings, as hereinbefore found, and that the complainant is entitled to the relief prayed for on account of the acts of waste so found.

"It is therefore ordered, adjudged and decreed that the defendant be and it is forever enjoined and restrained from committing or permitting any further acts of waste in or upon the said two Eagle street buildings, to wit, the buildings known as numbers 666 and 668 Eagle street, Chicago, Illinois. It is further ordered that this cause be referred to Hon. Charles C. Stilwell, one of the masters in chancery of this court, to take an accounting by and between the complainant and the defendant as to the nature, number and amount of the several acts of waste committed by the defendant in and upon the said two Eagle street buildings, since October 23, 1919, as hereinbefore found, and to fix and to determine the damages of the complainant by reason of such acts of waste and as to any payments made by the complainant or her representatives since October 23, 1919, for any premiums of insurance upon any of the buildings of the complainant, in excess of sixty cents for each one hundred dollars of insurance, per annum.

"Upon the taking of such an accounting the said master in chancery shall make report thereof, stating the nature, number and amount of the several acts of waste shown, as hereinbefore found, to have been committed by the defendant in the said Eagle street buildings since October 23, 1919, and the damage to the complainant by reason of such acts of waste and also make report of the amount of insurance premiums paid by the complainant since October 23, 1919, in excess of sixty cents per one hundred dollars of insurance on any of her said buildings."

No appeal or writ of error was prosecuted from the foregoing decree.

The master found that the buildings of the com-

plaintiff had been damaged in the amount of $1,328.28, but did not make a finding of any damages in regard "to an accounting for any additional insurance premiums." Both the complainant and the defendant filed objections to the master's report.

On the hearing of the objections before the court, the court confirmed the master's report in respect of the question of the insurance premiums and disapproved the master's report in respect of the method by which the master estimated the damages. The court entered a decree November 14, 1923, substantially as follows:

"This cause coming on now to be again heard upon the report of Hon. Charles C. Stilwell, master in chancery, to whom this cause heretofore was duly referred, by decree of court heretofore entered herein, to take an accounting by and between the complainant and the defendant as to the nature, number and amount of several acts of waste found by the said decree to have been committed by the defendant in and upon the buildings of the complainant known as numbers 666 and 668 Eagle street, Chicago, Illinois, since October 23, 1919, and to fix and to determine the damages of the complainant by reason of such acts of waste, and as to any payments made by the complainant or her representatives since October 23, 1919, or any premiums of insurance upon any of the buildings of the complainant in excess of sixty cents for each one hundred dollars of insurance; and upon the exception of the complainant to the said report, which exception has heretofore been overruled by the court; and upon the exceptions of the defendant to the said report, which said exceptions have heretofore been sustained by the court, and the court now being fully informed:

"Doth find that the said report of the said master in chancery, in so far as it fails to find any damages to the complainant by reason of any payments by her for premiums of insurance in excess of sixty cents for each one hundred dollars of insurance written

upon any of the buildings of the complainant, described in the bill of complaint herein, should be, and the same is, hereby confirmed and approved.

"And the court doth further find that the said master in chancery, in considering and determining the damages of the complainant by reason of each of the said several acts of waste committed by the defendant upon the said buildings of the complainant, assumed and took as the measure of such damages the cost respectively of restoring the said buildings to the condition in which they were before the commission of such act of waste, as of the date of the commission of such act of waste: Whereas, the court finds that the proper measure of such damages is the decrease in the market value of such buildings by reason of each of the said several acts of waste.

"And the court doth further find that the complainant offered no evidence as to any decrease in the market value of such buildings by any of such acts of waste: Wherefore the court doth find that the complainant can recover from the defendant only nominal damages which the court fixes at the sum of five dollars."

From this decree the complainant has prosecuted the present appeal.

It will be observed that there are only two questions to be determined on the appeal: First, whether the complainant is entitled to recover damages for an increased cost of insurance premiums by reason of the installation and operation of the soap factory by the defendant; and second, whether the damages done to the buildings by the defendant are to be measured by the decrease in the market value of the buildings, or by the cost of restoring the buildings to the condition they were in before they were damaged.

In regard to the matter of insurance the covenant in the lease provided as follows:

"Lessee agrees not to use the said premises in any manner that may increase the present rate of insurance thereon, and, if it does so use said premises, the

lessee agrees to reimburse the lessor, or her representatives, for any additional premium of insurance she or they may pay or become liable to pay by reason of such use, upon demand.''

In the decree of November 25, 1922, the direction to the master in regard to the insurance was as follows:

''to fix and to determine the damages of the complainant   *   *   *   as to any payments made by the complainant or her representatives, since October 23, 1919, for any premiums of insurance upon any of the buildings of the complainant, in excess of sixty cents for each one hundred dollars of insurance per annum *   *   *   and also make report of the amount of insurance premiums paid by the complainant since October 23, 1919, in excess of sixty cents per one hundred dollars of insurance on any of her said buildings.''

The evidence shows that the amount of the increased cost of insurance premiums in controversy was $52.10.

We are of the opinion that the finding of the court denying the complainant an allowance for increased insurance premiums was correct. The covenant in the lease provided that the lessee should not use the ''said premises'' in any manner that would increase the rate of insurance ''thereon.'' The only buildings mentioned in the lease were the two buildings ''known as numbers 666 and 668 Eagle street.'' The building on Lake street was not mentioned. The evidence showed only payments by the complainant of increased insurance premiums on the building on Lake street.

Counsel for the complainant contends that the ''physical unity of all these buildings as one structure, as described in the decree as well as in the bill of complaint, makes clear the reason'' why the covenant in the lease in regard to the increased cost of insurance premiums should include the building on Lake street. The answer to this contention is that the only buildings mentioned in the lease were the two buildings on Eagle street, and the covenant in the lease

refers to the "said premises" and to the rate of insurance "thereon."

The question as to what rule should be adopted to measure the damages the complainant has sustained by reason of the acts of waste of the defendant in regard to the buildings is the principal question in the case. The covenants which the complainant contends have been violated by the defendant are as follows: That at the expiration of the lease the defendant "will yield up the said premises to" the complainant "in as good condition as when they were entered upon" by the defendant, "loss by fire or inevitable accident or ordinary wear and tear excepted; and also will keep the said premises in good repair during the lease at its own expense."

The master found that the complainant had sustained twenty-seven specific items of damage for the acts of waste set forth in the decree of November 25, 1922, which was the decree directing the master to ascertain and report "the number and amount of the several acts of waste committed by the defendant." The twenty-seven items of damage, ranged in amounts from $3.80 to $194.40, totalled $1,328.28, and extended over a period of time beginning before October 23, 1919, and continuing to the date of the filing of the bill of complaint, namely, November 28, 1921.

It appears from the decree of November 14, 1923, that the measure of damages adopted by the master was the cost of restoring the buildings to the condition in which they were before the acts of waste were committed; and that the measure of damages which the court found to be proper was "the decrease in the market value of such buildings by reason of each of the said several acts of waste." It also appears from the decree of November 14, 1923, that the court further found that the complainant had "offered no evidence as to any decrease in the market value of such buildings by any such acts of waste"; and that,

therefore, the complainant could recover from the defendant only nominal damages, which damages the court fixed at the sum of $5.

There is a great deal of confusion in the decisions, both American and English, in regard to the question as to what is the proper measure of damages to be adopted in cases such as the one at bar. The rules generally followed are the two about which the court and the master differed, namely (1) the decrease in the market value of the premises by reason of the acts of waste, and (2) the cost of restoring the premises to the condition they were in before the acts of waste. According to some of the decisions the former rule should be applied when the action is brought before the expiration of the tenancy, and the latter rule should be applied when the action is brought after the expiration of the tenancy. 14 Amer. & Eng. Ann. Cas., p. 152.

There are cases in which the action was brought after the expiration of the lease, and in which the cost of the repairs was adopted as the proper measure of damages without the question being raised or discussed as to whether or not that measure of damages was applicable only to actions brought after the expiration of the lease; the sole issue in regard to the measure of damages being whether the measure of damages should be the depreciation in the value of the premises or the cost of the repairs. Such are the following cases: *Burke v. Pierce*, 27 C. C. A. 462, 464, 83 Fed. 95; *Anderson v. Miller*, 96 Tenn. 35, 43; *Vaughan v. Mayo Milling Co.*, 127 Va. 148, 162, 163; *Watriss v. First Nat. Bank of Cambridge*, 130 Mass. 343, 345; *Cawley v. Jean*, 218 Mass. 263, 270; *Appleton v. Marx*, 191 N. Y. 81, 83; *Lehmeyer v. Moses*, 127 N. Y. Supp. 253, 257; *Lehmaier v. Jones*, 91 N. Y. Supp. 687, 689, 690; *Willoughby v. Atkinson Furnishing Co.*, 93 Me. 185, 190.

It has also been held that where the landlord makes

the repairs with the consent of the tenant before the expiration of the lease, an action to recover the cost of making the repairs may be brought before the expiration of the lease, and that the measure of damages is the cost of making the repairs. *Darlington v. DeWald,* 194 Pa. St. 305.

In the case of *Markham v. David Stevenson Brewing Co.* [111 N. Y. App. Div. 178], 97 N. Y. Supp. 604, it was expressly held (p. 605) that an action could be brought before the expiration of a lease to recover damages for nonrepair, even though the landlord had not made the repairs.

In the case at bar counsel for the complainant and counsel for the defendant have narrowed the question in regard to the measure of damages to the question whether in a case such as the one at bar, where the action was brought before the expiration of the lease, the cost of restoring the buildings to their former condition is the proper measure of damages. This precise question has not been decided by the courts of this State.

Counsel for the complainant have referred us to the case of *Fitz Simons & Connell Co. v. Braun,* 94 Ill. App. 533, 542, in which there was an issue whether the measure of damages should be the difference between the market value of certain buildings before and after an alleged injury to the buildings, or whether the measure of damages should be the cost of repairing the buildings. The action did not arise by reason of the relation of landlord and tenant. The action was brought to recover damages to a building caused by blasting done in the construction of a tunnel near the property of the plaintiff. The court held that the cost of repairing the building was the more appropriate measure of damages, saying (p. 542):

"Here there is no question of injury to the land. The injury is to the building only, and is of such a

character that it may be precisely remedied by repairs. Nor is there any question of a comparison of benefits caused by improvement with injuries resulting. It was a simple matter of determining the extent of pecuniary compensation for the injury to the building. We are unable to perceive how any prejudice could result to appellant by measuring the damages by the cost of repair.''

In affirming the case of *Fitz Simons & Connell Co. v. Braun, supra,* the Supreme Court (199 Ill. 390) said (p. 397):

''It is insisted the proper measure of damages was the depreciation in value of the property resulting from the injuries. We think the cost of repairing the building and restoring it to its proper condition was the true measure of the damages.''

The distinction that is made by some of the authorities that where the action is brought before the expiration of the tenancy, the measure of damages is the decrease in the market value of the premises and not the cost of the repairs, is not recognized by the courts as a settled rule. On the contrary there are authorities which expressly hold that the measure of damages, even when the action is begun before the expiration of the lease, is the cost of restoring the premises to their former condition. *Moses v. Old Dominion Iron & Nail Works Co.,* 75 Va. 95; *Buck v. Pike,* 27 Vt. 529; *Markham v. David Stevenson Brewing Co., supra; Webster v. Nosser,* 2 Daly (N. Y.) 186; *Vivian v. Champion,* 2 Ld. Raym. 1125 (English); *Metge v. Kavanagh,* 11 C. L. 431 (Irish).

The case of *Doe v. Rowlands,* 9 Car. & Payne, 425, and the case of *Vivian v. Champion, supra,* both English cases, are the leading cases in England and America which announce the conflicting rules that (1) where the action is brought before the expiration of the lease the measure of damages is the decrease in the market value of the premises; and that (2) where the action is brought before the expiration of the lease the

measure of damages is the cost of restoring the premises to their former condition.

The case of *Doe v. Rowlands* announces the former rule, and the case of *Vivian v. Champion* announces the latter. According to the case of *Doe v. Rowlands,* the reason of the rule requiring the damages to be estimated by determining the decrease in the market value of the premises, where the action is brought before the expiration of the tenancy, is that it would not be (pp. 428, 429)

"fair to take the amount that would be necessary to put the premises into repair as the measure of the damages; for in such cases, when the damages are awarded the landlord, he is not bound to expend them in repairs, neither can he do so without the tenant's permission to enter on the premises."

In the case of *Vivian v. Champion, supra,* it was said (p. 1126) that the "damages ought in justice to be applied to the repair of the premises."

In the case of *Turner v. Lamb,* 14 Mees. & W. 412 (English), the decision of Lord Holt in the case of *Vivian v. Champion* was criticized by Alderson, B., who said (p. 413):

"The damage by non-repair may surely be very different if the reversion comes to the landlord in six months, or 900 years. Lord Holt's doctrine would startle any man to whom the proposition was stated. * * * If the passage I have cited from Lord Holt's judgment be correct, it seems to show that the damages must be the same in all cases; but surely there must be some difference between a term of one year and twenty years, or between an estate for life and an estate for years. I do not give any decided judgment on the case, but the point seems to be worthy of consideration."

We do not think that in the case at bar it should be the duty of the complainant to apply the amount of the damages to the repair of the buildings. The condition of the buildings was not due to the neglect or failure of the defendant to keep them in repair;

the condition was due to the acts of the defendant in altering the buildings to suit its own purposes, principally in connection with its soap factory. In other words, the acts of the defendant were acts of commission and not acts of omission. The court in the decree of November 25, 1922, expressly found that the defendant was guilty of "commissive waste." If, before the expiration of the lease, the buildings should be restored to their former condition, it would be a detriment to the defendant instead of a benefit, as the present condition of the buildings is the condition best adapted for the defendant's business. The defendant is not in a position to contend that the complainant has recovered damages which justly and fairly should be expended in repairing the buildings for the benefit of the defendant during the remainder of its term.

In Virginia, in two cases, one in which the action was begun before the expiration of the lease (*Moses v. Old Dominion Iron & Nail Works Co., supra*), and the other in which the action was begun after the expiration of the lease (*Vaughan v. Mayo Milling Co., supra*), the court adopted the same measure of damages, namely, the cost of restoring the premises to their former condition. In the latter case the former case was cited with approval.

It has been held explicitly in an Irish case (*Metge v. Kavanagh, supra*), in which the action was brought before the expiration of the lease and in which the question of the measure of damages was considered at length and the authorities were carefully reviewed, that either rule, namely, the cost of the repairs or the depreciation in the premises, might be adopted, even when the action was brought before the expiration of the lease. In discussing the question of the measure of damages, Palles, C. B., said (pp. 435, 436, 437, 438):

"In summing up, I told the jury that they might

apply to the case whichever of two measures of damages they considered most applicable to it and just to the parties, viz.: either the depreciation in the value of the reversion, or the present value of the sum requisite to put the premises into the repair in which they ought to be under the covenant. Both parties objected to this direction. * * * The defendant's objection was that the only measure of damages was the injury to the reversion caused by the want of repair. * * * To solve the question what is the true measure of damages recoverable in an action for breach of covenant to repair, brought during the pendency of the lease, we must first, in my mind, determine the same question in reference to an action brought after the termination of the lease. In an action of the latter description, the amount of the loss sustained by the plaintiff by reason of the breach of covenant (that is, the measure of damages) is generally the amount which it will take to put the premises in repair. But although this amount generally represents the loss, it is impossible to lay down as a general rule of law that in every such case it must necessarily do so. * * * I am, therefore, of opinion that in the case of such an action being brought at the end of the lease, the jury are not bound to give the full sum which it would take to put the premises in repair in which they ought to be under the covenant; but that they *may,* and in ordinary cases probably ought to, give such sum. But whatever sum they give, be it the cost of repair or the depreciation in the saleable value of the landlord's interest, it ought to be the sum which, in their opinion, most accurately represents the loss the plaintiff has under the circumstances sustained by reason of the breach of covenant. * * * Let us now pass to the present case, where the action has been brought pending the term. * * * I am, therefore, of opinion that where the action is brought pending the lease, the damages may be, but *need not necessarily be,* the present value of a sum equal to the cost of repair, that sum being payable at the end of the term. I am also of opinion that, in the same action, the dam-

ages *may*, but *need not necessarily, be* the injury caused by want of repair to the saleable value of the reversion. A rule that the injury to the saleable value of the reversion was, in every case of this description, the only measure of damages, could be supported only by holding that a plaintiff was bound to the defendant, the wrongdoer, to sell his reversion; and this cannot be seriously contended for. * * * In my opinion none of the cases which are now law are inconsistent with this view.''

The court then cited and considered among other cases the cases of *Vivian v. Champion, supra,* and *Doe v. Rowlands, supra.* Dowse, B., in concurring in the opinion of Palles, C. B., said (p. 441):

''It is very difficult in a case of this description to ascertain what is the true measure of damages. The authorities are rather conflicting. I have carefully read and considered them. * * * It appears to me in this case the result must be the same, no matter which test was applied. It is sufficient for me to say that I cannot see that it would be different.''

In New York the decisions are in conflict. The case of *Markham v. David Stevenson Brewing Co., supra,* Appellate Division, and the case of *Webster v. Nosser, supra,* Court of Common Pleas, hold expressly that in an action brought before the expiration of the lease the cost of repairs is the proper measure of damages. In the case of *Appleton v. Marx, supra,* Court of Appeals, in which an action was brought after the expiration of the lease, the court said (p. 83):

''The rule laid down by the leading text-writers is that where the action for the breach of a lessee's covenant to keep in repair is brought before the expiration of the term, the measure of damages is the injury done to the reversion; while, if the action is brought after the expiration of the term, the measure of damages is the cost of putting the premises into repair.''

An argument that is sometimes urged against the

right of a landlord to begin an action for damages for a breach of covenant, in regard to repairs before the expiration of the lease, is that the tenant has the whole term to make the repairs and thus save the breach. This argument is, in our opinion, effectively answered in the cases of *Moses v. Old Dominion Iron & Nail Works Co., supra,* and *Buck v. Pike, supra.* In the case of *Moses v. Old Dominion Iron & Nail Works Co.,* the court said (p. 98):

"The right of the plaintiff to maintain his action and to recover damages could not be at all affected by the continuance or discontinuance of the lease. * * * It has been said, however, that at all events the action will not lie until after the expiration of the lease, because the defendant's covenant is simply to leave the premises in good repair. He has, therefore, the whole term to make such repairs, and *non constat,* but that he may make them and thus save the breach. This position is equally untenable with the other, both upon principle and authority. The operation and effect of the covenant to repair are well understood. It extends not only to ordinary and gradual decay of the premises, but also accidental injuries by fire and tempest. So that under this covenant the lessee is bound to repair even when the damage to the inheritance is produced by causes over which he has no control. * * * Where, however, the tenant is guilty of voluntary waste, where by his act injury is done to the reversioner, then the lessor may bring his action during the lease, even though the tenant may have it in his power to restore the premises to their original state before its expiration. * * * This doctrine is founded on good sense and sound reason. If, as in the present case, the injury to the estate is of a permanent character, and the landlord cannot repair, and the tenant will not, both are deprived of the use of the property. * * * Should the landlord desire to sell, the marketable value of the property is so affected he cannot do so except as a sacrifice. * * * If the landlord is compelled to wait the expiration of the term before

he can sue, he must of course run all the risks of the tenant's continued solvency and of the loss of evidence by the death or absence of witnesses. And all this loss and inconvenience are to be borne, because perchance the tenant may conclude to repair the property during the term, in the face of his declaration that he will not repair, and of his express denial of all liability for the injury to the estate. * * * It has been said, however, the lessee ought not to be held to answer for all the fanciful or extravagant outlays the lessor may choose to make in repairing the buildings. That is very true. The measure of the lessee's liability is not what the lessor may think proper to expend, but what is necessarily expended in restoring the property to its former condition, or perhaps such sum as will be sufficient to compensate the lessor for the damage and loss sustained by the injury to the property.''

In the case of *Buck v. Pike, supra,* the court said (p. 532):

''It is insisted that the plaintiff can recover nominal damages only, on those covenants, as this action was commenced while the lessee was in possession, and before the termination of the lease; and that there is no breach of the covenants, on which an action can be sustained, if the covenants are performed before the interest of the lessee in the lease has terminated, and before the premises have passed into the hands of the plaintiff as lessor. The lessee is bound, *at all times,* to the performance of these covenants, and for any neglect the plaintiff can sustain his action, though there has been no termination of the lease. * * * The reason and propriety of this rule is apparent. The plaintiff, as lessor, has a right to insist that the buildings, at all times, be maintained, and the land managed according to good husbandry, as a matter of security for the performance of other covenants in the lease. The plaintiff, under these covenants, was entitled to recover his actual damages, or such damages as will put and keep the premises in that state and condition which is provided for by these covenants.''

Counsel for the defendant contends that in removing the stairs the defendant "was actually benefitting the building; and that the alterations of the building did not tend in any way structurally to weaken the building, but that the I-beams placed by the defendant under the second and third floors of the three-story building strengthened the said floors and thereby strengthened the building."

We think that the contention of counsel for the defendant is without merit. A similar contention was made in the case of *Willoughby v. Atkinson Furnishing Co., supra,* and was held to be unsound. In that case the court said (p. 190):

"The defendant contends that the measure of damages is the injury, if any, to the market value of the property; that if the alterations made by the lessee enhance the market value of the property, no damages would be recoverable upon this branch of the case. We do not think that this is the correct rule. The plaintiff was the owner of the building so arranged as to consist of two stores, offices and halls. In his lease he allowed the defendant, at its own expense, to make such alterations as would convert the whole building into one store, but the lessee was required, by the provisions in the lease already referred to, at the expiration of the term to replace any partitions removed and to deliver up the building in as good condition as when leased. The defendant cannot say in answer to a claim for damages for nonperformance of its covenants, that the radical changes voluntarily made by it enhanced or did not diminish the value of the property. The owner was entitled to exercise his own judgment as to the interior arrangement of his own building. He allowed the alterations to be made, but he protected his rights by the clauses in the lease which required the lessee to restore the building in the same condition, so far as voluntary alterations are concerned, as when leased. The rule as to the measure of damages is a simple one, it is the cost of doing what the defendant

covenanted to do but did not do; the cost of replacing the partitions and restoring the building to the same condition, so far as these voluntary alterations are concerned, as it was when leased."

It is evident, from the review of the authorities that we have made, that support may be found for the adoption as a measure of damages either the cost of restoring the buildings to their former condition, or the depreciation in the market value of the buildings.

We are clearly of the opinion, however, that the proper measure of damages in the case at bar is the reasonable cost of restoring the buildings to the condition they were in when they were entered upon by the defendant, ordinary wear and tear excepted. To estimate the damages by determining the decrease in the market value of the buildings by reason of the acts of waste of the defendant, the rule of damages decreed by the court would, we think, be an impracticable and inexact measure of damages. According to a strict interpretation of the decree of the court, each separate item of damage would have to be estimated by determining the decrease of the market value of the buildings by reason of that damage. Twenty-seven specific items of damage were committed by the defendant extending over a period of time beginning about the latter part of November, 1920, and continuing to the date of the filing of the bill, namely, November 28, 1921. If each separate item of damage should be determined by estimating the decrease in the market value of the buildings, the value of the buildings before the damage and the value after the damage would have to be ascertained twenty-seven times in order to arrive at the total amount of the damages. This method would require some one qualified to express an opinion as to such values. And an opinion, even if given by an expert, would not be exact, but would only be an approximation. Conse-

quently, since the amount of the damages to the buildings would depend on the decrease in the market value of the buildings, the amount of damages would be inexact. Furthermore, many factors might enter into the question of the depreciation of the buildings besides the specific item of damage. It would be most difficult even for a real estate expert to separate the various factors that might cause depreciation in value of the buildings, and to estimate how much of the depreciation was due to a specific item of damage, independently of other influences. If such an estimate was possible, it would be largely a conjecture. Again, the buildings might not have a marketable value. The land might be worth more without the buildings than with the buildings. Yet the buildings might be sources of income and the owner might not wish to sell the land.

If the decree should be interpreted as allowing the total amount of the twenty-seven specific items of damage to be determined by making one estimate of the value of the buildings before and after all of the items of damage, the only difference from making separate estimates as to the twenty-seven items of damage would be a difference in the amount of labor. All of the other objections that we have suggested would be applicable.

If the reasonable cost of restoring the buildings to their former condition should be adopted as the measure of damages, such a method would be simple and exact.

Counsel for the defendant contend that even if it should be conceded that the proper measure of damages is the cost of restoring the buildings to their former condition, the rule has not been correctly followed, for the reason that no allowance has been made for depreciation in value of the buildings due to ordinary wear and tear nor for the substitution of new material for old. Counsel for the defendant have

not indicated any evidence that would tend to show that no allowance was made in the estimate of damages for ordinary wear and tear, or for the substitution of new material. The only evidence in this respect is to the effect that the estimate of each specific item of damage was based on the "customary and reasonable price" of doing the work necessary to restore the buildings to the condition they were in before the specific item of damage had been committed. According to the testimony of the witness Solomon, a building contractor and "estimator," he "just figured on restoring this stuff that was cut off—just to put it back exactly as it was, irrespective of making it better or worse." Moreover, in regard to the right to use new materials, it has been expressly held in the case of *Burke v. Pierce, supra* (p. 464), that where "the property could only be restored to the required condition by the use of new materials, the cost of such materials" comes within a covenant to restore the property to its former condition.

Counsel for the defendant cites the following cases in support of his contention that since the action in the case at bar was brought before the expiration of the lease, the measure of damages is the decrease in the market value of the buildings: *Stoudenmire v. DeBardelaben,* 85 Ala. 90; *Bodkin v. Arnold,* 48 W. Va. 114; *Watriss v. First Nat. Bank of Cambridge,* 130 Mass. 343, 345; *Robinson v. Kinne,* 1 Thomp. & Cook (N. Y.) 62; *Kent v. Bentley,* 10 Ohio Cir. Ct. 134; *Mc-Cartney v. Titsworth,* 119 N. Y. App. Div. 548; *First Nat. Realty & Loan Co. v. Mason,* 185 Mo. App. 41; *Morris v. Knight,* 14 Pa. Super. Ct. 324-333; *Aberle v. Fajen,* 42 N. Y. Super. Ct. 223.

In the view we have taken of the case at bar it will be unnecessary to review the cases cited by counsel for the defendant. It may be conceded for the sake of argument that those cases hold a contrary rule to the one that we have adopted. We recognize that

there is conflict and confusion in the decisions in regard to the question in controversy. But after a careful consideration of the authorities we are of the opinion that the rule which we have indicated is the reasonable and practical rule that is applicable to the case at bar.

Counsel for the defendant has also cited the two following Illinois cases in support of his position: *Cooper v. Randall,* 59 Ill. 317, and *Conklin v. Newman,* 278 Ill. 30. We do not think that either of the cases is in point.

In the case of *Cooper v. Randall, supra,* an action was brought by the owner of a house, which was occupied by a tenant of the owner, for damages to the house caused by chaff, dust, dirt and other impurities thrown from a flouring mill near the owner's premises. The court held in substance (p. 323) that the owner could only recover for damage to the reversionary right and interest in the house; that the tenant was entitled to recover damages, and that both the owner and the tenant could not recover the same damages.

In the case of *Conklin v. Newman, supra,* the court similarly held in substance (p. 38) that in an action by the owner of land for trespass, where the land was in the possession of a tenant, the owner could only recover for the damage to the reversionary right and interest and could not recover for damage to the possessory right of the tenant.

For the reasons stated in the opinion the decree of the court of November 14, 1923, is affirmed as to the part denying the complainant the right to recover damages by reason of the increased rate of insurance premiums; and is reversed as to the part holding that the proper measure of damages is the decrease in the market value of the buildings by reason of the acts of waste of the defendant. As the decree of the court shows that the master adopted the measure of

damages which we have decided was the correct measure, and as the evidence shows that according to that measure of damages the damages of the complainant amounted to $1,328.28, the cause is remanded with directions to the court to enter a decree in favor of the complainant in the sum of $1,328.28, and for such other proceedings as may not be inconsistent with this opinion.

*Affirmed in part, reversed in part, and remanded with directions.*

McSURELY, P. J., and MATCHETT, J., concur.